937 P.2d 1082 (1997)
132 Wash.2d 267
GREATER HARBOR 2000, A Washington Non-Profit Corporation; Gary Ogden; George A. Wade; Arlene Wade; William Owchar; Ann Owchar; Michael J. Reberg; Gerald Kingen; James Paul Kinch; Theda N. Brentson; and John P. Kennedy, on their own behalf and on behalf of and as class representatives for all other persons similarly situated, Appellants,
v.
CITY OF SEATTLE, a Washington Municipal Corporation and Port of Seattle, a Washington Municipal Corporation, Respondents.
No. 63644-3.
Supreme Court of Washington, En Banc.
Argued November 19, 1996.
Decided June 5, 1997.
*1084 Helsell, Fetterman, Martin, Todd & Hokanson, Peter J. Eglick, Jonathan P. Meier, Seattle, and Bob C. Sterbank, Federal Way, for Appellants.
Mark Sidran, Seattle City Attorney, Judith B. Barbour, Asst. City Attorney; and Tracy M. Goodwin, Seattle, for Respondents.
*1083 SMITH, Justice.
Appellants[1] seek direct review of a decision of the King County Superior Court which on summary judgment denied their petition for declaratory and injunctive relief, mandamus and writs of review to set aside acceptance by the Seattle City Council of a recommendation of the Council's Transportation Committee to grant preliminary approval of a petition by the Port of Seattle to vacate 15.2 acres of public streets and an alley located in the Port's Southwest Harbor Redevelopment Project. We granted review. We affirm.

QUESTIONS PRESENTED
The questions presented in this case are (1) whether Appellant Greater Harbor 2000 has standing to challenge a decision by the City of Seattle to grant preliminary approval of a petition by the Port of Seattle to vacate 15.2 acres of public streets; and (2) whether a prior agreement between the Port of Seattle and the City of Seattle can exempt the Port of Seattle from complying with the Seattle Municipal Code requirement for compensation to the City for street vacations.

STATEMENT OF FACTS
Respondent Port of Seattle (Port) is a municipal corporation created in 1911 under RCW 53.04 to enhance and manage the flow of water and air passenger traffic, cargo and goods through King County. The Port accomplishes its mission by planning and developing marine terminal and airport facilities for use by private industry and the public. Under RCW 53.08 the Port is given the necessary powers to accomplish its purposes.
The Port is a major developer of the Southwest Harbor Redevelopment Project (Project), a comprehensive remediation and marine redevelopment project of about 190 acres of industrial land in the Duwamish Industrial Area of Seattle. The Project has several purposes: (1) to clean up contaminated industrial land; (2) to expand the existing container ship facility; and (3) to develop an intermodal rail yard within the container ship facility. The Project site originally was under multiple ownership and fragmented by several intervening streets, but the Port has acquired most of the tracts of land and is in process of completing acquisition of the remaining tracts.[2] The site is currently devoid *1085 of any public access areas or amenities.[3]
The Port conducted over 200 meetings with members of the community to obtain their reaction to the design of proposed mitigation measures and public amenities for the Project. The Port sponsored a design workshop, issued Project newsletters and sent mailings to more than 75,000 people.[4]
The Port of Seattle on October 7, 1994 submitted to the City of Seattle a petition to vacate several streets located in the Project site to permit the Port to incorporate the property underlying those streets into the Project. The "vacation" of streets is an exclusive method by which the owners of properties abutting a street may petition the legislative authority of a city to extinguish the public's easement for public travel on a street's right-of-way and allow title to the underlying street property to be vested in the abutting property owners.[5]
The Port sought vacation of the following streets in Seattle: West Marginal Way Southwest; Southwest Florida Street; 26th Avenue Southwest; 29th Avenue Southwest; and an alley between Southwest Spokane Street and West Marginal Way Southwest. Vacation of those four streets and the alley would result in elimination of 15.2 acres of public rights-of-way.
The Port promised, as a condition for approval of the street vacation petition, to dedicate to the City of Seattle 15.1 acres of land and public improvements valued at about $10 million.[6] The Port has spent $67 million on environmental cleanup and $18.5 million on urban impact mitigation, with a total expenditure for public use improvements and environmental benefits being $95.5 million.[7]
Appellant Greater Harbor 2000 (Greater Harbor) is a private interest group consisting of a Washington nonprofit corporation and individual taxpayers in the City of Seattle: Gary Ogden, George A. Wade, Arlene Wade, William Owchar, Ann Owchar, Michael J. Reberg, Gerald Kingen, James Paul Kinch, Theda N. Brentson, and John P. Kennedy.[8] Neither the corporation nor the individuals own tracts within or contiguous to the Project.[9] Appellant Greater Harbor participated in public hearings and submitted written comments to the Seattle Street Use Appeals Board and the Seattle City Council relating to the petition of the Port for the Project street vacations.[10]
On September 11, 1995, after extensive discussion and public response during seven public committee meetings following the June 28, 1995 filing of the recommendation of Seattle's Street Use Appeal Board, the Seattle City Council voted 8-0 to accept the recommendation of the Council's Transportation Committee to grant preliminary approval of the petition by the Port for vacation of the streets.[11]
*1086 The challenged action of the Council is memorialized in Resolution 29295 which reads in its entirety:
A RESOLUTION relating to intergovernmental relations between the City of Seattle and the Port of Seattle, calling for a like resolution from the Port of Seattle Commission signifying its willingness to enter into negotiations to amend or modify the Port-City agreement, entered into in connection with the Port's Central Waterfront Project and authorized by Ordinance 114876, and the Public Access Plan for the Duwamish Waterway, adopted by the City by Resolution 27127 and by the Port by Resolution 2949.
WHEREAS, on December 27, 1989 the Port of Seattle and The City of Seattle entered into an agreement ("Central Waterfront Agreement") relating to the vacation of portions of certain downtown streets, to enable the Port to proceed with its Central Waterfront Project; and
WHEREAS, the Central Waterfront Agreement contains a term by which the City agreed that any future street vacations granted to the Port would be at no cost to the Port (except administrative costs) and would not include any payment based on the fair market value of the area vacated; and
WHEREAS, the City is in the process of completing the vacation of approximately 14.52 acres of street area, the fair market value of which is conservatively estimated to be $6.5 million, to enable the Port to proceed with the development of its Southwest Harbor Project, which project includes substantial mitigation of its impacts together with public use improvements, but for which no street vacation fees except administrative costs have been required; and
WHEREAS, the City Council believes that the Central Waterfront Agreement, which has no term prescribing its length or duration, has been in effect for a reasonable time, that the purposes of the agreement have been fulfilled, and that the Port has received the benefit of its bargain; and
WHEREAS, in 1985 the Port and the City completed a joint planning effort which culminated in the adoption of the Comprehensive Public Access Plan for the Duwamish Waterway ("Duwamish Plan"), and;
WHEREAS, circumstances have changed over the ten years since the Duwamish Plan's adoption, with some of the development proposed in the Plan having been accomplished, and some now appearing to be rendered obsolete by a more rapid shift to containerization than was expected; and
WHEREAS, the Port is contemplating substantial redevelopment of Harbor Island in a manner that appears to be substantially different from that envisioned in the 1985 Plan, and which will require the vacation of more street area than was contemplated by the City and the Port, either in the Duwamish Plan or the Central Waterfront Agreement; and
WHEREAS, the Harbor Island redevelopment process would benefit from a comprehensive, joint planning process similar to that engaged in for the Duwamish Plan; NOW, THEREFORE,
BE IT RESOLVED BY THE CITY COUNCIL OF THE CITY OF SEATTLE:
The City Council calls on the Port of Seattle Commission to adopt a resolution directing Port staff to meet and confer with City staff for the purpose of identifying amendments and modifications to the Central Waterfront Agreement and the Duwamish Plan, in order to plan for orderly and rational development of Harbor Island and the vacation of any streets thereon.
The City Council further calls on the Mayor of Seattle to direct City staff to meet and confer with Port staff for the same purpose.
ADOPTED by the City Council of the City of Seattle this 11 day of September, 1995, and signed by me in open session in authentication of its adoption this 11 day of September, 1995.
 s/Jim Street_____________________
 President of the City Council
*1087 Filed by me this 11 day of September, 1995.
 s/Judith E. Pippin______________
 City Clerk
On September 25, 1995 Appellant Greater Harbor filed in the King County Superior Court this class action petition for declaratory and injunctive relief, mandamus and statutory and constitutional writs of review on behalf of themselves and "on behalf of and as class representatives for all other persons similarly situated" in the City of Seattle. They sought to set aside the preliminary approval by the Seattle City Council of the street vacation unless the Port compensates the City in the amount of at least one-half the appraised value of the streets vacated or unless the Port conveys to the City property equal in value to the vacated property under authority of RCW 35.79.030 and Seattle Municipal Code Chapter 15.62.[12]
In its complaint, Appellant Greater Harbor contended the Seattle City Council did not comply with applicable Seattle Municipal Code provisions which required payment of compensation when the Council unanimously approved the recommendation to grant the petition of the Port for vacation of the streets and alley.[13]
Appellant Greater Harbor also contends the Seattle City Council improperly accepted the Port's claim that under the terms of two interlocal agreements between the City and the Port (the 1980 West Seattle Bridge Agreement and the 1989 Central Waterfront Agreement) the Port was not required to pay compensation or to convey property for the specific street vacations in the Project because the two agreements required the City to waive payment for all future street vacations requested by the Port.[14]
Appellant Greater Harbor contends Seattle Municipal Code Chapter 15.62[15] required the Port to pay the City an amount equal to at least one-half of the appraised value of the streets to be vacated, or convey Port property to the City appraised at least at half the fair market value of the land being vacated.[16]
The King County Superior Court, the Honorable Charles V. Johnson, on November 29, 1995 granted summary judgment to Respondents Port of Seattle and City of Seattle and denied summary judgment to Appellant Greater Harbor. The court determined that no genuine issue of material fact existed on any of the causes of action in the complaint of Appellant Greater Harbor.[17] The Order on Summary Judgment read:
This matter comes before the Court on the motions of 2 defendants Port of Seattle and Port [sic] of Seattle for an Order Granting Port of Seattle's and City of Seattle's Motions for Summary Judgment and Denying Greater Harbor 2000's (GH2) Motion for Summary Judgment, granting Port of Seattle's Motion to Strike in part portions of plaintiff's declarations and ... GH2's motion to strike Port of Seattle's supplemental brief and Dismissing GH2's Complaint with prejudice. The Court heard oral argument of counsel for plaintiffs GH2, Helsell, Fetterman, Martin, Todd and Hokanson by Peter J. Eglick,; for defendant Port of Seattle, Traci M. Goodwin, Port Counsel; for defendant City of Seattle, Judith B. Barbour, Assistant City Attorney, and considered the following pleadings and evidence:

*1088 1. Plaintiff's Motion for Partial Summary Judgment;
2. Declaration of Jonathan P. Meier;
3. Defendant Port of Seattle's Motion and Memorandum for Summary Judgment Dismissing Plaintiff's Complaint and Response to GH2's Motion for Partial Summary Judgment;
4. Declaration of Charles Sheldon;
5. Declaration of Ruth Strawser;
6. Declaration of Traci Goodwin;
7. City of Seattle's Motion for Summary Judgment Dismissing Complaint;
8. Declaration of Judith Barbour in Support of City of Seattle's Motion for Summary Judgment;
9. Declaration of Tom Tierney in Support of Defendant City of Seattle's Motion for Summary Judgment;
10. Declaration of Beverly Barnett in Support of Defendant City of Seattle's Motion for Summary Judgment;
11. City of Seattle's Response to plaintiff's Motion for Partial Summary Judgment;
12. Plaintiff's Response to Defendant's Motions for Summary Judgment;
13. Declaration of Jessica Ritts;
14. Declaration of Jonathan P. Meier;
15. Reply Brief of Plaintiffs;
16. Supplemental Declaration of Jonathan P. Meier;
17. Defendant POS Reply to Plaintiff's Response to Defendant's Motions for Summary Judgment;
18. Declaration of Ruth Strawser;
19. City of Seattle's Reply to Plaintiff's Response to Defendants' Motions for Summary Judgment;
20. Affidavit of Kerin R. Steele;
21. Port of Seattle's Motion to Strike Portions of GH2's Declarations;
22. [Stricken]
23. Plaintiff's Response to Defendant's Motion to Strike Portions of Greater Harbor 2000's Declarations;
24. Plaintiff's Motion to Shorten Time;
25. Plaintiff's Motion to Strike Supplemental Brief of Defendant POS and Declaration of Frank S. Yanigamachi and for Sanctions Pursuant to CR 11 and LR 56(b);
26. Port of Seattle's Reply on Motion to Strike Portions of Declarations;
27. [Stricken]
28. [Stricken]
29. [Stricken]
and having reviewed the files and records in this case and based on the argument of counsel and the evidence presented, the Court finds that no genuine issue of material fact on any of the causes of action in GH2's complaint and that defendants Port of Seattle and City of Seattle are entitled to judgment as a matter of law.
Based on the above findings it is hereby ORDERED:
1. Defendants Port of Seattle and City of Seattle Motions for Summary Judgment Dismissing GH2's Complaint are granted;
2. GH2's Motion for Partial Summary Judgment is Denied
3. Defendant Port of Seattle's Motion to strike portions of Plaintiff's Declarations is granted in part;
4. Plaintiff GH2's Motion to Strike Port of Seattle Supplemental Brief is granted; and
5. Judgment shall be entered in favor of defendants Port of Seattle and City of Seattle dismissing GH2's complaint with prejudice.
ORDERED this 15 day of December, 1995
 s/ Charles V. Johnson
 Judge Charles V. Johnson
In issuing the order on summary judgment, Judge Johnson made the following comment:[18]
[T]he court is satisfied that the Plaintiffs in this matter do not have standing to challenge the actions of the City Council in this matter.... [T]hey are not property owners that abut to it, at least the streets that are involved in this matter. They certainly have no problems as it relates *1089 to access. They are not at all disturbed in their access and they suffer no financial injuries.
Without standing, the Plaintiffs in this matter are not entitled to relief. There is no material issue of fact that's before the Court which should be considered. Therefore, I'm going to deny the Plaintiff's Motion for Summary Judgment in this matter.
On December 21, 1995 Appellant Greater Harbor sought direct review by this court of the decision of the King County Superior Court. We granted review on June 4, 1996.

DISCUSSION
Respondents Port of Seattle and City of Seattle contend Appellant Greater Harbor has made no specific assignments of error, but has merely objected generally to the decision of the trial court denying its motion for partial summary judgment and granting summary judgment to Respondents City of Seattle and Port of Seattle.
Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[19] When reviewing an order on summary judgment, this court engages in the same inquiry as the trial court.[20] This court will affirm summary judgment if no genuine issue of material fact exists and the moving party is then entitled to judgment as a matter of law.[21]
A material fact is one of such nature that it affects the outcome of the litigation.[22] The burden of showing there is no issue of material fact falls upon the party moving for summary judgment.[23] Only after the moving party has met its burden of producing factual evidence showing it is entitled to judgment as a matter of law does the burden shift to the nonmoving party to set forth facts showing that there is a genuine issue of material fact.[24]
This court must consider all facts and inferences in the light most favorable to the nonmoving party, and the motion should be granted only if, from all the evidence, reasonable persons could reach but one conclusion.[25] All questions of law are reviewed de novo.[26]
Appellant Greater Harbor did not assign error to the finding by the trial court that "no genuine issue of material fact [existed] on any of the causes in General Harbor's complaint." "It is elementary that the lack of argument, the lack of citation to the record, and lack of any authorities preclude consideration of those assignments. The findings are verities."[27] The order of the trial court granting summary judgment to Respondents is supported by the uncontroverted conclusion there is no genuine issue of material fact in the case.
Appellant Greater Harbor nevertheless contends the record reveals "genuine issues of material fact" entitling it to a trial on the merits. It argues that genuine issues of material fact are raised in the pleadings and *1090 affidavits, but does not otherwise identify those issues of material fact.
Appellant contends the trial court was in error in denying it standing to challenge the decision by the Seattle City Council approving the recommendation to grant the street vacation petition of the Port because Appellant did not satisfy the abutter standing rule. Appellant contends that London v. City of Seattle[28] limits the rule of abutter standing to "procedurally correct" vacations, arguing that because the City of Seattle did not comply with the Seattle Municipal Code requirement of compensation for street vacations Appellant need not comply with the abutter standing rule. Appellant also contends that taxpayers who allege a generalized injury to all taxpayers indeed have standing to challenge any illegal act of their government.
Appellant contends that the 1980 agreement and the 1989 agreement between the Port of Seattle and the City of Seattle and resulting ordinances could not exempt the Port from compensating the City for street vacations as required by the Seattle Municipal Code. Appellant contends the City of Seattle violated its own Municipal Code when it enacted agreements as "special ordinances" to override the "general" Seattle Municipal Code requirement of compensation for street vacations.
Respondent City of Seattle contends that prior cases have established the abutter standing rule that property owners whose property does not abut upon a portion of a street proposed to be vacated do not have the right to contest the vacation unless there is interference with their access to the property or other vested right. Respondent City of Seattle argues that because Appellant does not own any property within or contiguous to the Southwest Harbor Project land tract it thus does not have the right to contest vacation of streets in the Project. Respondent Port of Seattle asserts that Appellant is relying upon mere dictum in London v. City of Seattle to support its claim of standing to challenge the Council's decision.
The standing doctrine prohibits a litigant who is not adversely affected by a public act or statute from asserting the legal rights of another.[29] That is to say "one who is not adversely affected by a statute may not question its validity." Yet this court has in some cases recognized standing to challenge governmental acts based solely upon the litigant's status as a taxpayer.[30] The recognition of taxpayer standing has been given freely in the interest of providing a judicial forum for citizens to contest the legality of official acts of their government.[31] Under this circumstance a taxpayer must first request action by the Attorney General and that request must be refused before action is begun by the taxpayer.[32]
"The mere fact that a taxpayer disagrees with a discretionary decision of the city provides no basis for a suit challenging that decision.... In order to maintain an action, the taxpayer must show ... a unique right or interest that is being violated, in a manner special and different from the rights of other taxpayers."[33] The taxpayer must show that the action complained of interferes with the taxpayer's legal rights or privileges. If not, the taxpayer has no standing to challenge the action.[34]
*1091 Apparently Greater Harbor did bring this matter to the attention of the Attorney General as one based upon Appellant's status as taxpayers.[35] Appellant has presented no argument establishing that it has a unique legal right or privilege which was violated by the decision of the Seattle City Council to accept the recommendation of its Transportation Committee to grant preliminary approval of the petition of the Port of Seattle to vacate the streets in the Southwest Harbor Redevelopment Project. At most Appellant merely disagrees with the decision based upon its interpretation of the Seattle Municipal Code. This is not a sufficient basis for clothing Appellant with standing to challenge the Council in a legal action at this stage of the process.
A municipal corporation is permitted to enter into contracts which are proper and reasonably necessary to enable it to perform functions expressly conferred and essential to enable it to perform fully the duties of a local government.[36] The City of Seattle has authority to enter into contracts.[37] RCW 35.79.030 grants municipal corporations the authority to vacate streets and those municipal corporations are authorized to require compensation for street vacations.[38] The authority to require compensation is permissive. Nothing in the statute makes it obligatory for cities or towns to require compensation for street vacations. The City of Seattle has enacted a general ordinance providing for street vacation and compensation.[39] That ordinance need not control a petition for vacation by the Port of Seattle if the Seattle City Council, by resolution, determines otherwise. Indeed, under the Seattle City Charter, the Council may by resolution "determine otherwise."[40]
The City of Seattle entered into agreements with the Port of Seattle (the 1980 West Seattle Freeway Interlocal Agreement and the 1989 Central Waterfront Project Agreement) for street vacations. The Port paid $10 million cash and $1.3 million in property in 1980 and $5.8 million cash in 1988 and 1989 under those contracts. The City exercised its legislative authority over street vacations by executing the 1980 and 1989 street vacation agreements with the Port and confirming them by ordinance or resolution.[41] Documents such as agreements may be adopted and enacted as ordinances where the documents adopted are sufficiently identified and made a part of the public record so there is no uncertainty about them.[42]
Appellant Greater Harbor has not sufficiently established its contention the City of Seattle violated the Seattle Municipal Code requiring compensation for street vacations by its decision to accept the recommendation of the Transportation Committee to grant preliminary approval of the petition of the Port of Seattle to vacate streets in the Southwest Harbor Redevelopment Project. Appellant *1092 merely disagrees with that decision and contends, without substantiation, that the City has illegally waived compensation from the Port for the street vacation. The record before us does not indicate the City has taken any final action on the petition, although its preliminary action does point in that direction. We cannot assume that the Seattle City Council will commit an illegal act in whatever action it may finally take on the Port's petition, although that action predictably may be final approval.

SUMMARY AND CONCLUSIONS
Appellant Greater Harbor did not assign any error to the finding by the trial court that no genuine issue of material fact existed on any of the causes in Appellant's complaint, but assigned error only to the dismissal on summary judgment. The order of the trial court granting summary judgment to Respondents and dismissing Appellant's complaint is supported by the uncontroverted conclusion from the record that there is no genuine issue of material fact in the case.
Appellant Greater Harbor has no standing to bring this action. Its members, while taxpayers, are not abutting property owners. Appellant has not established that it has a unique legal right or privilege that was violated by the decision of the Seattle City Council to accept the recommendation of its Transportation Committee to grant preliminary approval of the petition of the Port of Seattle to vacate the streets in the Southwest Harbor Redevelopment Project. Appellant has not established that the City of Seattle has at this stage of the process violated the Seattle Municipal Code.
We affirm the decision of the King County Superior Court granting summary judgment to Respondents Port of Seattle and City of Seattle, denying summary judgment to Appellant Greater Harbor and dismissing its petition for lack of standing.
DOLLIVER, J., concurs.
JOHNSON, Justice (concurring).
I concur with the result reached by the majority, namely, that summary judgment was properly granted in favor of the City of Seattle (City); however, I would do so on the basis that the argument of the Appellants is premature.
The proper doctrine on which to resolve this case is that of ripeness. While the majority implicitly recognizes that a determination on the legality of the proposed street vacation is premature, it fails to resolve the case on that basis. See majority at 1085 n. 11. We do not resolve issues of law absent "an actual, present and existing dispute, or the mature seeds of one, as distinguished from a possible, dormant, hypothetical, speculative, or moot disagreement." Diversified Indus. Dev. Corp. v. Ripley, 82 Wash.2d 811, 815, 514 P.2d 137 (1973); accord First United Methodist Church v. Hearing Exam'r for Seattle Landmarks Preservation Bd., 129 Wash.2d 238, 244-45, 916 P.2d 374 (1996).
This case concerns the preliminary approval of the street vacation. As noted by the majority, the resolution passed by the Seattle City Council granted preliminary approval only to vacate the streets at issue. Majority at 1085. Additionally, both the majority and dissenting opinions recognize the City's authority under article XXII, section 2 of the Seattle City Charter to suspend by ordinance the operation of the code provision mandating compensation for vacation of a street. Thus, regardless of whether the majority's or dissent's analysis of the legality of the proposed vacation is correct, if the Seattle City Council's final ordinance authorizing vacation of the streets in this case makes a specific reference to the Seattle Municipal Code section relating to compensation and suspends its provisions, the street vacation would be "legal."
In sum, there is nothing for us to review. The controversy presented is hypothetical and speculative, and may be rendered moot. Absent the enactment of a final ordinance by the City, Appellants have failed to present an issue ripe for review by this or any court. Based on ripeness, I would affirm the trial court's grant of summary judgment in favor of the City.
DURHAM, C.J., and TALMADGE, J., concur.
*1093 MADSEN, Justice (concurring/dissenting).
The trial court erroneously granted summary judgment of dismissal in favor of the City of Seattle on the ground that all the Appellants lack standing, and the majority erroneously affirms this ruling. However, I concur with the majority's ultimate conclusion on the merits that at this stage of the proceedings there has been no violation of Seattle Municipal Code (SMC) 15.62.090 by the City of Seattle. Accordingly, Appellants are not entitled to relief.

Standing
A landowner whose property abuts a street or a portion of a street sought to be vacated or a non abutting landowner who suffers special injury has standing to challenge a street vacation. London v. City of Seattle, 93 Wash.2d 657, 660-61, 611 P.2d 781 (1980); see Yarrow First Assocs. v. Town of Clyde Hill, 66 Wash.2d 371, 374, 403 P.2d 49 (1965) (town's plan to landlock property through street vacation created a special damage supporting the property owner's challenge to attempted vacation). The issue here is whether taxpayer standing provides an independent basis to challenge an allegedly illegal street vacation, and, if so, whether the taxpayer must suffer some particularized injury greater than that suffered by other taxpayers before he or she may bring suit. The majority concludes that such particularized injury must be shown. I disagree.
As the cases cited by the majority suggest, the parameters of taxpayer standard are not entirely clear. Nonetheless, this is an appropriate case in which to recognize taxpayer standing. RCW 35.79.030 provides that a city or town may provide by ordinance that a street vacation will not be effective until abutting landowners compensate the city or town. Pursuant to the state statute, SMC 15.62.090(A) mandates that the City "shall not" pass any ordinance vacating any street or alley until the city collects one-half of the appraised value of the property to be vacated from the abutting landowners.[1] Thus, the City's income is impacted when a street is vacated. Here, over $3 million is at stake. Taxpayers clearly should have standing to complain about the legality of the City's governmental act if the City proceeds to vacate streets while disregarding SMC 15.62.090.
"The recognition of taxpayer standing has been given freely in the interest of providing a judicial forum when this state's citizens contest the legality of official acts of their government." State ex rel. Boyles v. Whatcom County Superior Court, 103 Wash.2d 610, 614, 694 P.2d 27 (1985). Taxpayer standing is particularly appropriate in the context of this case where intergovernmental agreements provide for street vacations and the sole abutting landowner and the only directly affected entity is the Port, a party to those agreements. Absent taxpayer standing, no one is in a position to complain about the allegedly illegal street vacations.
Accordingly, this court should follow those cases holding that taxpayer standing to challenge governmental acts does not require alleging a personal stake in the matter. Walker v. Munro, 124 Wash.2d 402, 419, 879 P.2d 920 (1994); State ex rel. Boyles, 103 Wash.2d at 614-15, 694 P.2d 27. The court should recognize that, in addition to the standing conferred on abutting landowners and non abutting landowners suffering special injury, taxpayer standing to challenge street vacations as illegal may be found where a city or town has enacted an ordinance pursuant to RCW 35.79.030 which provides that compensation shall be paid to the city or town by the abutting landowners as a prerequisite to vacation.

Whether SMC 15.62.090 Violated
The next question is whether the City of Seattle has unlawfully violated SMC 15.62.090 by vacating streets without requiring that the abutting landowner, the Port of Seattle, pay one-half of the appraised value. At the time Appellants brought this suit, the City Council had passed Resolution 29195, voting to accept the recommendation of its Transportation Committee to grant preliminary approval of the Port of Seattle's petition to vacate the streets at issue. That resolution refers to the 1989 contract between the City and the Port and its terms *1094 providing that no payment would be due from the Port upon future vacation of streets requested by the Port.
Initially, the 1989 contract and the accompanying 1989 ordinance did not amend SMC 15.62.090. A contract plainly cannot amend an ordinance. The accompanying 1989 ordinance authorizing the mayor to execute the contract with the Port stated that future street vacations would not require payment, but did not comply with state and local law concerning the procedures required for amending another ordinance, as Justice Sanders' dissent explains. Thus, the 1989 ordinance did not amend SMC 15.62.090.
Further, the 1989 ordinance did not suspend SMC 15.62.090, contrary to the City's argument. That ordinance makes no mention of SMC 15.62.090 and does not indicate it operated to suspend SMC 15.62.090. At a minimum, an ordinance suspending the operation of another ordinance should plainly indicate the suspension. Otherwise, neither those voting on the ordinance providing for suspension nor the public will have notice that an existing ordinance is being suspended.
The 1989 contract does not otherwise justify ignoring the payment requirements of SMC 15.62.090. First, as Justice Sanders explains in his dissent, the City's contract is illegal insofar as it requires performance in violation of the ordinance. Second, under the express terms of the Seattle City Charter art. XXII, § 2, the City could suspend operation of SMC 15.62.090 only by ordinance. It could not do so by contract.[2]
However, Appellants' argument that the City has violated SMC 15.62.090 because the Council passed the resolution is without merit as well. The resolution is not an ordinance at all, and thus, not an ordinance vacating the streets without payment. While Resolution 29195 might suggest plans to bypass the requirements of SMC 15.62.090, so far the City has not violated that ordinance. Accordingly, Appellants are not entitled to any relief as no violation has occurred.
Finally, to the extent Appellants' argument is that the City has violated its charter by trying to amend or suspend SMC 15.62.090 by way of Resolution 29195, the argument should be rejected. Under the Seattle City Charter art. XXII, § 2, the City could amend or suspend the operation of SMC 15.62.090 vis a vis the Port only by ordinance. The City could not and did not amend or suspend SMC 15.62.090 by resolution.[3]
I would hold that taxpayers have standing to challenge the legality of a street vacation where a city or town has enacted an ordinance pursuant to RCW 35.79.030 which provides that compensation shall be paid to the city or town by the abutting landowners before the street is vacated. However, while Appellants have standing to bring suit, they are not entitled to relief because, as of this point in time, the City has not violated its ordinance, SMC 15.62.090.
GUY, J., concurs.
SANDERS, Justice (dissenting).
We must determine two issues: (1) whether the City of Seattle is bound by its own general ordinances, and, if it is, (2) whether a group of citizens may bring a taxpayer suit to enforce the law. The majority says no, no. I say yes, yes and accordingly dissent.
Did Seattle violate its own ordinance by vacating streets without requiring adjacent landowners to pay one-half the value?
Yes. The City of Seattle had a mandatory duty to collect from the abutting landowner one-half the fair market value of all streets vacated. The taxpayers assert the law clearly *1095 mandates such collection and that even the city government is not above the law.
The applicable ordinance, Seattle City Ordinance 111076 (Mar. 28, 1983), unambiguously mandates the City "shall" collect one-half the property's appraised value from the abutting property owners as a condition precedent to street vacation.[1] Use of the word shall in an ordinance imposes an imperative, rather than permissive, duty. Singleton v. Frost, 108 Wash.2d 723, 728, 742 P.2d 1224 (1987).
In 1994 the Port of Seattle, a municipal corporation and the abutting landowner, petitioned the City of Seattle to vacate 15 acres of streets in West Seattle to enable the Port to expand a container shipping terminal. The City conservatively estimated the value of the vacated streets at $6.5 million. The Port is the only abutting property owner and requested the vacations.
Although the Port is a municipal corporation, it is not exempt from the payment requirement. Municipal corporations such as the Port were at one time exempt from paying street vacation fees.[2] However, in 1983 the city council formally amended the prior ordinance to remove the exemption for municipal corporations. Seattle City Ordinance 111076, § 1 (1983). Consequently from 1983 to date the ordinance has required municipal corporations to pay for street vacations as would any private person.[3]
Despite the 1983 ordinance amendment the Seattle City Council granted the Port's request that the streets be vacated without charge to the Port. See Clerk's Papers (CP) at 120 (Seattle City Council Resolution 29195 (Sept. 11, 1995) ("the City is in the process of completing the vacation of approximately 14.52 acres of street area ... to enable the Port to proceed with the development of its Southwest Harbor Project ... for which no street vacation fees ... have been required....")).
The critical question is whether ordinance 111076 (1983) applies in this case. The City and Port argue (and the majority agrees) this ordinance does not control for a variety of reasons.
First, Justice Smith's opinion identifies a 1989 contract (CP at 276-80) and accompanying ordinance 114876 (Dec. 27, 1989) (CP at 274) as authority to disregard ordinance 111076 (1983). The 1989 contract concerned the Port's central waterfront project to revamp Seattle's downtown waterfront. The contract specifically listed certain streets to be vacated in downtown Seattle for which the Port gave consideration. The contract also stated any future street vacations requested by the Port would be made without requiring payment.
Ordinance 114876 (1989) also authorized the Mayor to execute the contract with the Port. Ordinance 114876 provided: "[T]he Mayor is hereby authorized to execute an Agreement [with the Port] ... establishing that any future street vacations petitions ... would not require a payment based upon the fair market value of the area vacated...." CP at 274 (Seattle City Ordinance 114876, § 1 (1989)). This ordinance, however, made no mention of or reference to the general fee requirement previously established by ordinance 111076 (1983).
The opinion of Justice Smith claims the 1989 contract in itself authorizes the free vacations, even absent an ordinance, under a contract theory. It reasons cities have authority both to enter contracts and to require *1096 compensation and therefore can enter a contract not requiring compensation. Smith op. at 1091. However a contract cannot lawfully violate an applicable municipal ordinance. Any contract requiring performance in violation of an applicable ordinance is illegal and void even if made by the city. Mincks v. City of Everett, 4 Wash.App. 68, 73, 480 P.2d 230 (holding void and unenforceable a city contract because it violated a city ordinance), review denied, 79 Wash.2d 1002 (1971); 10 Eugene McQuillin, The Law of Municipal Corporations § 29.06, at 280 (3d rev. ed. 1990) ("A contract of a municipal corporation is ordinarily invalid if it is prohibited by, or clearly in violation of duly enacted municipal ordinances....").
The City next argues (and the opinion of Justice Smith again agrees) the 1989 ordinance authorizing the contract was "special legislation" which "silently" amended ordinance 111076 (1983). Smith op. at 1091-92. However, we question whether the city council lawfully is entitled to amend a generally applicable ordinance in this fashion.
First the 1989 ordinance must amend the 1983 ordinance to accomplish its objective. The test for determining whether a legislative act attempts to amend an earlier act is: "Would a straightforward determination of the scope of rights or duties under the existing statutes be rendered erroneous by the new enactment?" Washington Educ. Ass'n v. State, 93 Wash.2d 37, 41, 604 P.2d 950 (1980). Were the 1989 ordinance effective it would clearly conflict with the 1983 ordinance requirement that all abutting landowners must pay. And if it were effective the 1989 ordinance would constitute an amendment to the 1983 ordinance.
In order for the City to amend an ordinance, however, it must follow a strict procedure to lawfully accomplish that objective. Failure to follow that procedure renders the attempted amendment void. This is the scenario here. The 1989 ordinance (114876) did not comply with mandatory form and procedure and, thus, did not lawfully amend the 1983 ordinance (111076).
State law requires amendments to ordinances may be accomplished only by ordinance and further requires the amending ordinance "shall set forth in full the section or sections, or subsection or subsections of the [municipal] codification being amended...." RCW 35.21.560. Similarly, the Seattle City Charter mandates no ordinance may be revised or amended except by re-enacting the new ordinance at length as revised or amended. Seattle City Charter art. IV, § 9.[4] The Seattle Municipal Code (SMC) also unambiguously declares "new, amendatory or other materials altering the Seattle Municipal Code shall be adopted by the City's legislative authority as separate ordinances.... [and] shall set forth in full the section or sections, or subsection or subsections of the codification being amended...." SMC § 1.01.030 (Seattle City Ordinance 109560, § 3 (1980)). Thus, state statute, city charter, and city ordinance all set forth mandatory procedures to amend an ordinance. None of them, however, was followed here.
Municipalities must comply with state and municipal law. In cases where municipal government fails to comply in substance or form the attempted legislative act is invalid. For example, in Savage v. City of Tacoma, 61 Wash. 1, 112 P. 78 (1910), this court struck a city ordinance because its adoption was procedurally flawed. We declared "where a municipal charter prescribes a definite method for the enactment of ordinances, such requirements are mandatory, and no authority is vested in the lawmaking body of the municipality to pass ordinances except in the manner required by the charter." Id. at 6, 112 P. 78. See also Puget Sound Alumni of Kappa Sigma, Inc. v. City of Seattle, 70 Wash.2d 222, 227, 422 P.2d 799 (1967) (holding a Seattle City Council legislative act void for failure to comply with Seattle City Charter requirement that all legislative acts be by ordinance); Tennent v. City of Seattle, 83 Wash. 108, 111-12, 145 P. 83 (1914) (holding a Seattle City Council ordinance invalid for failing to comply with charter requirement that no nonappropriation ordinance shall be *1097 passed at the same meeting it is introduced); In re Eng, 113 Wash.2d 178, 191, 776 P.2d 1336 (1989).
Ordinance 114876 (1989) was not enacted in appropriate form and thus cannot amend ordinance 111076 (1983) because the 1989 ordinance did not set forth in full ordinance 111076, nor did it re-enact it as amended. The 1989 ordinance does not even reference ordinance 111076 (1983). Further, no party claims the relevant portion of ordinance 111076 has been amended since its 1983 enactment.
Such legal requirements to amend ordinances are designed to provide specific notice to all citizens of any change in the law.[5] However, any citizen examining the SMC after the 1989 ordinance was adopted, much less the ordinance itself, could not conclude the 1983 ordinance was amended.
Flanders v. Morris, 88 Wash.2d 183, 558 P.2d 769 (1977) vacated a state appropriation because it was never properly codified and no one examining the code could know of its existence. The fatal flaw was that "[o]ne seeking the law on the subject would have to know one must look under an `appropriations' title in the uncodified session laws to find the amendment." Id. at 189, 558 P.2d 769. The purported 1989 amendment to SMC 15.62.090 is similarly defective.
Nor is it claimed that the 1983 ordinance removing the municipal corporation exemption is invalid.[6] If the City wishes to once again exempt municipal corporations such as the Port it must do so openly, deliberately, and properly by amending the prior ordinance in the form and by the method otherwise required by law.
To further justify its holding the majority references a 1980 contract between the City and Port, also ratified by ordinance 109135 (June 20, 1980). CP at 248. Such ordinance, however, was consistent with the then-existing ordinance which exempted municipal corporations from vacation payment. Further, the 1980 contract in itself has no bearing whatsoever on this case because it has long since expired. The 1980 contract was the "West Seattle Freeway Bridge Interlocal Agreement" and pertained to building that bridge. While that agreement referenced street vacations, it specifically limited any vacations to those requested "during the term of th[e] Agreement." CP at 254-55.[7] The term of the contract was specifically limited to the removal of the existing bridge and construction of a new one. When the West Seattle Bridge was completed years ago, the 1980 agreement expired.
Justice Smith then opines ordinance 111076 (1983) was overridden by the 1996 city council resolution authorizing the vacation. It states the 1983 "ordinance need not control a petition for vacation ... if the Seattle City Council, by resolution, determines otherwise." Smith op. at 1091.
However it is elementary that a resolution cannot trump an ordinance.[8] As discussed above, only a properly adopted ordinance may amend the directives of another ordinance. See Seattle City Charter art. XXII, § 2 ("No privilege shall be granted that suspends or conflicts with any ordinance, except by ordinance."); Seattle City Charter art. IV, § 7 ("Every legislative act of said City shall be by ordinance."). A resolution is not an ordinance but rather an expression of opinion without legislative effect. See Baker v. Lake City Sewer Dist., 30 Wash.2d 510, 518, 191 P.2d 844 (1948) ("The term `resolution' as *1098 applied to the act of an official body such as a city council or a board of county commissioners ordinarily denotes something less solemn or formal than the term `ordinance,' and, generally speaking, is simply an expression of the opinion or mind of the official body....").
In summary, the 1983 ordinance clearly requires the Port, as an abutting property owner, to pay one-half the appraised value of the streets as a condition to street vacation. This ordinance has not been repealed or lawfully amended. The Port has not paid. The City has no intention to collect. The City cannot lawfully act in disregard of its own ordinances. Our nation is built upon the principle that citizen and state alike are under the law and bound by it. Marbury v. Madison, 5 U.S. (1 Cranch) 137, 163, 2 L.Ed. 60 (1803) (ours is a "government of laws, and not of men"); Thomas Paine, Common Sense and Other Political Writings 32 (Nelson F. Adkins ed., 1953) ("in America the law is king"). It is the function of this court to keep it so.

Standing
The opinion of Justice Smith considers taxpayer standing and concludes there is none. This is error.[9] As a leading scholar on municipal law explains, "[f]or at least a hundred years, the clear weight of authority has permitted citizens and taxpayers to sue their public servants for the performance of duties imposed by law upon the latter." 2 Chester James Antieau, Municipal Corporation Law § 16.58, at 16-118 (1991). The law clearly imposes a duty upon the city council to collect monetary consideration in this case, but the city council ignores its duty. Vacating the streets without requiring payment amounts to an illegal disposition. "Taxpayers have standing to protest the illegal disposition of municipal properties." 2 Antieau, supra § 16.51, at 16-110.
As a preliminary matter, taxpayer standing serves to check governmental lawlessness. State ex rel. Boyles, 103 Wash.2d 610, 614, 694 P.2d 27 (1985) (acknowledging the high value placed on taxpayer suits which are allowed in "the interest of providing a judicial forum" for citizens to "contest the legality of official acts of their government.").
From the earliest days of statehood we have allowed citizens to bring suit against the government to enforce the law solely on the basis of their status as taxpayers. Times Publ'g Co. v. City of Everett, 9 Wash. 518, 37 P. 695 (1894) (allowing taxpayer suit to force the City of Everett to abide by the city code); State ex rel. Boyles, 103 Wash.2d at 614, 694 P.2d 27 ("This court recognizes litigant standing to challenge governmental acts on the basis of status as a taxpayer.").
The opinion of Justice Smith suggests before a taxpayer may bring suit he must show some particularized injury greater than that suffered by other taxpayers. Smith op. at 1090. While this may be an accurate statement of federal law,[10] it is simply not the law in Washington. We have repeatedly held "a taxpayer need not allege a personal stake in the matter, but may bring a claim on behalf of all taxpayers...." Walker v. Munro, 124 Wash.2d 402, 419-20, 879 P.2d 920 (1994) (citation omitted); see also City of Tacoma v. O'Brien, 85 Wash.2d 266, 269, 534 P.2d 114 (1975) ("It is well settled that taxpayers, in order to obtain standing to challenge the act of a public official, need allege no direct, special or pecuniary interest in the outcome of their action...."); State ex rel. *1099 Boyles, 103 Wash.2d at 614, 694 P.2d 27 (taxpayer has standing even though the only injury alleged was "one common to all citizens."); Kenneth R. Bjorge, Standing to Sue in the Public Interest: The Requirements to Challenge Statutes and Acts of Administrative Agencies in the State of Washington, 14 Gonz. L.Rev. 141, 155-56 (1978) ("In Washington, however, a taxpayer need allege no special interest to have standing.").
Justice Smith's opinion mistakenly relies upon American Legion Post No. 32 v. City of Walla Walla, 116 Wash.2d 1, 7, 802 P.2d 784 (1991) for the proposition that a taxpayer challenging "a discretionary decision of the city" must allege a particular injury and that general taxpayer status alone will not suffice to confer standing. Smith op. at 1090. While this is correct as to challenges of discretionary, and legal, acts, it is not the rule for challenging nondiscretionary, illegal ones. We held in 1985, prior to Walla Walla, no particularized injury need be alleged to confer standing to challenge illegal government acts. See State ex rel. Boyles, 103 Wash.2d at 614, 694 P.2d 27. We have continued to adhere to that rule after Walla Walla. See Walker, 124 Wash.2d at 419-20, 879 P.2d 920 (decided in 1994). The opinion of Justice Smith does not distinguish these cases; it cites them and ignores their holdings. See Smith op. at 1090-91 ("this court has in some cases recognized standing to challenge governmental acts based solely upon the litigant's status as a taxpayer.") (citing State ex rel. Boyles, 103 Wash.2d at 614, 694 P.2d 27). The result of the majority's mistaken holding may be the end of taxpayer standing in Washington.[11]
Any taxpayer suit challenging an alleged illegal act must meet two requirements: "the complaint must allege both a taxpayer's cause of action and facts supporting taxpayer status." Dick Enters., Inc. v. Metropolitan/King County, 83 Wash.App. 566, 572-73, 922 P.2d 184 (1996). These plaintiffs have stated a valid taxpayer's cause of action and have alleged facts supporting their status as taxpayers.
In Barnett v. Lincoln, 162 Wash. 613, 299 P. 392 (1931) a taxpayer brought suit alleging that a city corporation executed a contract without requiring a bond from the other party as required by law. This court recognized taxpayer standing because "the risk of loss resulting from noncompliance or breach of the contract would fall upon the taxpaying public. The assumption of this risk constitutes a general damage." Id. at 622, 299 P. 392. The court noted when a municipal corporation violates the law "it is a fair presumption that every taxpayer will be injured in some degree by such illegal act" even if no pecuniary harm can be shown. Id. at 623, 299 P. 392. See also State v. Morgan, 131 Wash. 145, 148, 229 P. 309 (1924) (illegal expenditure of state funds constitutes sufficient harm to supply taxpayer standing because he loses "the benefit which he would otherwise have received...."); State ex rel. Gebhardt v. Superior Court for King County, 15 Wash.2d 673, 680, 131 P.2d 943 (1942) ("[A] taxpayer may seek relief in equity against a public wrong which results in imposing an additional burden on the taxpayers.").[12] Here Seattle taxpayers suffered a $3 million loss. This loss is much greater than the risk of loss faced in Barnett which we nevertheless found sufficient to confer standing.
However, we still allow taxpayer suits to go forward even absent a showing that the taxpayers as a whole will face a monetary loss. See State ex rel. Lemon v. Langlie, 45 Wash.2d 82, 273 P.2d 464 (1954) (allowing a taxpayer suit alleging Seattle location of executive offices contravenes constitution which required them to be in Olympia even though no monetary loss to taxpayer was alleged).
*1100 In such case, the injury that must be alleged is that the government is violating the law.[13]
Justice Smith's opinion also makes passing reference to the so-called "abutting property owners" rule. Smith op. at 1092. That rule is inapplicable. In London v. City of Seattle, 93 Wash.2d 657, 660, 611 P.2d 781 (1980) this court held a non abutting property owner "may not question a procedurally correct vacation or the purpose therefor." (Emphasis added.) Here, however, the procedure was not correct.
It is no doubt true that when a litigant challenges the exercise of discretion to effect a procedurally correct, legal street vacation, he must allege a particular injury such as loss of access or abutter status. See Yarrow First Assocs. v. Town of Clyde Hill, 66 Wash.2d 371, 403 P.2d 49 (1965) (landlocked abutting property owner successfully challenged town decision to vacate street on abuse of discretion grounds). However, when the plaintiff challenges the legality of a governmental act and not the wisdom behind the exercise of discretion, he may do so as a taxpayer without alleging loss of access, other particular injury, or abutter status. See London, 93 Wash.2d at 660, 611 P.2d 781.

Conclusion
These taxpayers allege the City violated its own ordinance at a cost to the taxpayers in excess of $3 million. The taxpayers have standing and they are correct the City acted in violation of its own ordinance. Summary judgment in the taxpayers' favor on standing and the merits is appropriate. I dissent.
ALEXANDER, J., concurs.
NOTES
[1] Appellants consist of Greater Harbor 2000, a Washington nonprofit corporation, and 10 individual citizen taxpayers. For editorial convenience we refer to appellants collectively in the singular as "Greater Harbor."
[2] Port of Seattle Final Environmental Impact Statement (Nov. 1994), Clerk's Papers at 96. RCW 53.04.010 provides: "Port districts are... authorized ... for the purposes of acquisition, construction, maintenance, operation, development and regulation ... of harbor improvements, rail or motor vehicle transfer and terminal facilities, water transfer and terminal facilities, air transfer and terminal facilities, or any combination of such transfer and terminal facilities, and other commercial transportation, transfer, handling, storage and terminal facilities, and industrial improvements."
[3] Id. at 100.
[4] Resp't Port of Seattle's Mot. for Summ. J. Dismissing Appellant's Compl. and Resp. to Appellant's Mot. for Partial Summ. J., Clerk's Papers at 333.
[5] RCW Chapter 35.79
[6] Br. Resp't Port of Seattle at 4. Clerk's Papers at 762.
[7] Id. at 758, 762.
[8] Appellant Greater Harbor 2000's Compl. for Declaratory and Injunctive Relief and Pets. for Mandamus and for Statutory and Constitutional Writs of Review, Clerk's Papers at 6.
[9] Southwest Harbor Redevelopment Project Map, Clerk's Papers at 673.
[10] Resp't Port of Seattle's Answer, Affirmative Defenses and Counterclaim, Clerk's Papers at 186.
[11] The streets at issue have not yet been vacated. Preliminary approval gives the Council authority to vacate the streets by passage of an ordinance. RCW 35.79.030. Typically a Seattle street vacation ordinance is not passed until all conditions of the preliminary approval have been met, which may include such things as substantial relocation of utilities or reconstruction of utilities located in the vacated rights-of-way, grants of easements, construction of required replacement streets and public amenities. Resp't City of Seattle's Mot. for Summ. J. Dismissing Compl., Clerk's papers at 299.
[12] Appellant Greater Harbor 2000's Compl. for Declaratory and Injunctive Relief and Pets. for Mandamus and for Statutory and Constitutional Writs of Review, Clerk's Papers at 21-23.
[13] Id. at 11.
[14] Id. at 11.
[15] The Seattle Municipal Code establishes requirements for vacation of Seattle streets. It requires all petitioners to pay one half of the appraised value of property to be vacated, or to convey real property to the City of a comparable value. Seattle Municipal Code §§ 15.62.030,.090, .100, and .110 set forth procedures for preparation of appraisals, submission of appraisal cost deposits, and inclusion of appraisal information in the City's decision record on a street vacation petition.
[16] Appellant Greater Harbor 2000's Compl. for Declaratory and Injunctive Relief and Pets. for Mandamus and for Statutory and Constitutional Writs of Review, Clerk's Papers at 11.
[17] Order Granting Port of Seattle's Mot. for Summ. J. and Denying Greater Harbor 2000's Mot. for Partial Summ. J., Clerk's Papers at 578-584.
[18] Transcript of Summ. J. Decision, 66-67. See App., Br. of Resp't Port of Seattle.
[19] CR 56(c).
[20] Malnar v. Carlson, 128 Wash.2d 521, 534, 910 P.2d 455 (1996); Mountain Park Homeowners Assn. v. Tydings 125 Wash.2d 337, 883 P.2d 1383 (1994); Syrovy v. Alpine Resources, Inc., 122 Wash.2d 544, 859 P.2d 51 (1993).
[21] CR 56(c).
[22] Malnar, 128 Wash.2d at 535, 910 P.2d 455; Hash v. Children's Orthopedic Hosp. & Med. Ctr., 110 Wash.2d 912, 915, 757 P.2d 507 (1988); Barrie v. Hosts of Am., Inc., 94 Wash.2d 640, 618 P.2d 96 (1980).
[23] Malnar, 128 Wash.2d at 535, 910 P.2d 455.
[24] Hash 110 Wash.2d at 915, 757 P.2d 507; Barrie, 94 Wash.2d 640, 618 P.2d 96
[25] Malnar, 128 Wash.2d at 535, 910 P.2d 455; Marincovich v. Tarabochia, 114 Wash.2d 271, 787 P.2d 562 (1990); Syrovy, 122 Wash.2d 544, 859 P.2d 51; Wilson v. Steinbach, 98 Wash.2d 434, 656 P.2d 1030 (1982).
[26] Syrovy, 122 Wash.2d 544, 859 P.2d 51 Hoffer v. State, 110 Wash.2d 415, 755 P.2d 781 (1988).
[27] Henderson Homes, Inc. v. City of Bothell, 124 Wash.2d 240, 244, 877 P.2d 176 (1994); Cowiche Canyon Conservancy v. Bosley, 118 Wash.2d 801, 809, 828 P.2d 549 (1992); American Legion Post No. 32 v. Walla Walla, 116 Wash.2d 1, 7, 802 P.2d 784 (1991).
[28] 93 Wn.2d 657, 660, 611 P.2d 781 (1980) (A landowner whose property does not abut on the street or portions sought to be vacated or a non abutting landowner who does not suffer special injury may not question a procedurally correct vacation or its purpose.).
[29] Walker v. Munro, 124 Wash.2d 402, 419, 879 P.2d 920 (1994).
[30] State ex rel. Boyles v. Whatcom County Superior Court, 103 Wash.2d 610, 614, 694 P.2d 27 (1985).
[31] Id. at 614, 694 P.2d 27.
[32] Id. See City of Tacoma v. O'Brien, 85 Wash.2d 266, 269, 534 P.2d 114 (1975); Farris v. Munro, 99 Wash.2d 326, 329, 662 P.2d 821 (1983).
[33] American Legion Post No. 32 v. City of Walla Walla, 116 Wash.2d 1, 7, 802 P.2d 784 (1991); In re Bellingham, 52 Wash.2d 497, 499, 326 P.2d 741 (1958).
[34] American Legion, 116 Wash.2d 1, 802 P.2d 784
[35] During oral argument counsel for Appellant, in response to a question from the Court, asserted there was in the Clerk's Papers correspondence on this subject between Appellant and the Attorney General. See letter of October 4, 1995 from the Solicitor General to Bob C. Sterbank. Clerk's Papers at 461.
[36] 10 Eugene McQuillin, The Law of Municipal Corporations, § 29.05, at 263 3d ed. rev. (1990).
[37] RCW 39.34.080. "Any one or more public agencies may contract with any one or more other public agencies to perform any governmental service, activity, or undertaking which each public agency entering into the contract is authorized by law to perform...."
[38] RCW 35.79.030. "If the legislative authority determines to grant [a petition for vacation in whole or in part, the] city or town shall be authorized and have authority by ordinance to vacate [the] street ... and the ordinance may provide that it shall not become effective until the owners of the property abutting upon the street ... shall compensate [the] city or town in an amount which does not exceed one-half the appraised value of the area so vacated...."
[39] Seattle Municipal Code Chapter 15.62.
[40] City of Seattle Charter, Art. XXII § 2 ("PRIVILEGES GRANTED BY ORDINANCE: No privilege shall be granted that suspends or conflicts with any ordinance, except by ordinance.") (emphasis added).
[41] See Seattle City Ordinance 114876 (Dec. 27, 1989). See Seattle City Ordinance 109139 (June 20, 1980). See Seattle Council Resolution 29195 (Sept. 11, 1996).
[42] Friedman v. Goodman, 219 Ga. 152, 132 S.E.2d 60 (1963). See Scott Paper Co. v. City of Anacortes, 90 Wash.2d 19, 578 P.2d 1292 (1978).
[1] SMC 15.62.090(B) allows conveyance of other property to the City in lieu of this payment.
[2] The 1980 contract, also relied upon by the City, is irrelevant to this action because it expired by its own terms before the present dispute arose and it does not pertain to the proposed street vacations at issue in this case.
[3] I express no opinion at this point as to the outcome if the City, in the future, attempts to suspend operation of SMC 15.62.090 by ordinance. An opinion on this issue, at this time, by this court, would be a prohibited advisory opinion. See Walker v. Munro, 124 Wash.2d 402, 411-12, 879 P.2d 920 (1994); Diversified Indus. Dev. Corp. v. Ripley, 82 Wash.2d 811, 815, 514 P.2d 137 (1973).
[1] Ordinance 111076 (Mar. 28, 1983) (codified at Seattle Municipal Code (SMC) 15.62.090) mandates in relevant part:

A. Ordinances vacating any street or alley or part thereof shall not be passed by the City Council until a sum equal to one-half (½) of the appraised value of the area vacated is paid to the city....
B. Conveyance of other property acceptable to the City may be made in lieu of the payment required by subsection A....
(Emphasis added.)
[2] Former SMC 15.62.090 (Seattle City Ordinance 109740, § 1 (1981)) stated street vacation "compensation... shall not be required in connection with the vacation of any street, alley or public place, or any part thereof, which has been requested only by ... municipal corporations...."
[3] For example, in 1992, Harborview Medical Center, a public hospital, sought a street vacation to expand its facility. Despite the urgings of two council members to bypass the compensation requirement, Harborview was required to pay $500,000 in kind pursuant to SMC 15.62.090.
[4] The full text reads: "No ordinance shall be revised, re-enacted, or amended by reference to its title; but the ordinance to be revised or re-enacted or the section thereof amended, shall be re-enacted at length as revised or amended." Seattle City Charter art. IV, § 9.
[5] In addition to the above-mentioned requirements for amendments, each ordinance must have a clear title, may not cover more than one subject, cannot be passed at the meeting where it is first introduced, and must be subsequently published. Seattle City Charter art. IV, §§ 7, 8, 13.
[6] The 1983 amendment is an example of a properly adopted amending ordinance. It begins by stating that SMC 15.62.090 "is amended to read as follows: ...." and then it re-enacts SMC 15.62.090(B) in its entirety showing added and deleted language. Seattle City Ordinance 111076, § 1 (1983). Further, the 1983 amendment is now codified as part of SMC 15.62.090.
[7] I also note that while the Port was exempt from the payment requirement under the then-existing ordinance it gave consideration anyway for the streets then vacated.
[8] Curiously, the majority cites authority establishing a resolution is not legally binding but holds the opposite! See Smith op. at 1091 n. 40.
[9] Further, if there really is no standing, why does the majority reach the merits and discuss whether or not the City violated the law? See Flast v. Cohen, 392 U.S. 83, 99, 88 S.Ct. 1942, 1952, 20 L.Ed.2d 947 (1968) ("The fundamental aspect of standing is that it focuses on the party seeking to get his complaint before a ... court and not on the issues he wishes to have adjudicated.").
[10] See, e.g., ASARCO Inc. v. Kadish, 490 U.S. 605, 613-14, 109 S.Ct. 2037, 2043-44, 104 L.Ed.2d 696 (1989) (citing Doremus v. Board of Educ. of Borough of Hawthorne, 342 U.S. 429, 434, 72 S.Ct. 394, 397, 96 L.Ed. 475 (1952)). However, the Supreme Court has acknowledged that even the stringent federal standing requirement is relaxed at the municipal level to allow ordinary taxpayer standing. ASARCO, 490 U.S. at 613-14, 109 S.Ct. at 2043-44 (citing Frothingham v. Mellon, 262 U.S. 447, 486-87, 43 S.Ct. 597, 601, 67 L.Ed. 1078 (1923) ("The interest of a taxpayer of a municipality in the application of its moneys is direct and immediate and the remedy by injunction to prevent their misuse is not inappropriate.")).
[11] The essence of taxpayer standing is that one's status as taxpayer is sufficient to challenge illegal government dispositions. Requiring a litigant to allege a particularized injury is no longer standing based on taxpayer status.
[12] Accord Harman v. City & County of San Francisco, 7 Cal.3d 150, 496 P.2d 1248, 1254, 101 Cal.Rptr. 880 (1972) ("Plaintiff, as a municipal taxpayer seeking to avoid the waste of municipal assets [resulting from city's failure to collect full value of streets vacated], falls into the category of a type of claimant long recognized to possess a sufficiently intense interest in his claim to establish his `standing' to enter the courtroom.").
[13] While the necessity of requesting the state attorney general to sue a municipality over a matter of municipal (not state) law is doubtful, it need not be addressed here because the request was clearly made in any event.