81 P.3d 876 (2003)
119 Wash.App. 501
Garth KIGHTLINGER, Gary Scarbrough, Sid Sutherland, and Mark Williams, Respondents,
v.
PUBLIC UTILITY DISTRICT NO. 1 OF CLARK COUNTY, a/k/a Clark Public Utilities, Appellants.
No. 29296-3-II.
Court of Appeals of Washington, Division 2.
December 16, 2003.
*878 Donald Stewart Cohen, Gordon, Thomas, Honeywell et al., Joan C. Foley, Attorney at Law, Seattle, WA, for Appellant.
Ben Shafton, Attorney at Law, Vancouver, WA, for Respondent.
Richard Allan Finnigan, Attorney at Law, Olympia, WA, for Amicus Curiae WA Independent Telephone Assoc.
*877 ARMSTRONG, J.
Garth Kightlinger[1] and several other Clark County taxpayers (the Taxpayers) sued Public Utility District No. 1 of Clark County, alleging that the PUD lacked statutory authority to engage in the business of repairing appliances other than those it sells or leases. Both parties moved for summary judgment; the trial court granted the Taxpayers' motion. On appeal, the PUD contends it has implied authority to operate the *879 repair business. In addition, it argues there is no justiciable controversy, the Taxpayers lack standing to challenge PUD's longtime repair business, and laches bars the Taxpayers' action. We find no error and, therefore, affirm.

FACTS
Although the PUD's primary business is selling and distributing electricity, it has repaired appliances for over 60 years. The PUD repairs major appliances such as central forced air furnaces and air conditioning, heat pumps, baseboard heating, and ovens. Some of their services are not offered by anyone else in the county, and most repair service customers are also electric customers. The PUD offers the service to promote conservation and energy efficiency. The PUD also points out that customers are happy with their repair service. But the program apparently has been losing money. And the PUD recently raised their repair rates to help cover the losses.
In 1998, the Washington State Attorney General's Office (AG) issued an opinion that the PUD did not have legal authority to repair appliances other than those it sold or leased. The opinion stirred public interest, and Vancouver's daily newspaper published a number of articles and letters to the editor on the repair business. State legislation on the issue was introduced in 2001, but it did not pass. After the AG opinion, the Taxpayers waited for the PUD to "do the right thing" and discontinue its appliance repair service. Clerk's Papers (CP) at 167. When the PUD continued to repair appliances, the Taxpayers asked the AG to sue the PUD, but the AG declined.
The Taxpayers sued on May 11, 2001, seeking declaratory relief and to enjoin the repair business. The trial court granted Taxpayers' summary judgment. In its injunction, it declared that the PUD "does not have the statutory authority to engage in the business of repairing electrical appliances other than those it sells or leases." CP at 334.

ANALYSIS

I. Justiciable Controversy
The PUD asserts that no justiciable controversy exists because the Taxpayers do not claim any economic injury. The Taxpayers argue that their taxpayer status gives them sufficient interest in the subject matter to sue. Further, according to the Taxpayers, justiciability is not required where the issue is of major public importance.
A court will hear a declaratory judgment action only when a justiciable controversy exists or an issue of major public importance is involved. DiNino v. State ex rel. Gorton, 102 Wash.2d 327, 330, 684 P.2d 1297 (1984). A justiciable controversy is: (1) an actual, present, and existing dispute; (2) between parties having genuine and opposing interests; (3) that involves interests that are direct and substantial, rather than potential, theoretical, abstract, or academic; and (4) a judicial determination will be final and conclusive. Diversified Indus. Dev. Corp. v. Ripley, 82 Wash.2d 811, 815, 514 P.2d 137 (1973) (citations omitted).
Here, the parties have an actual, present, and existing dispute: whether the PUD has legal authority to repair appliances. This dispute is not hypothetical or speculative. Diversified Indus. Dev. Corp., 82 Wash.2d at 815, 514 P.2d 137. The parties also have "genuine and opposing interests," which are both direct and substantial. CP at 343. The PUD has an interest in continuing its repair services to serve customers and maintain its employees. The Taxpayers have an interest in assuring that the PUD does not spend their tax dollars to repair appliances (especially since it appears to be losing money). Finally, a judicial determination of the dispute would be final and conclusive.
But even if no justiciable controversy exists, the court may hear a declaratory judgment action if the issue is of major public importance. DiNino, 102 Wash.2d at 330, 684 P.2d 1297. The PUD and the Taxpayers disagree about whether the PUD's authority to engage in appliance repair is of widespread public interest. The PUD contends that it is of local interest only, pointing out that it is the only PUD in the State to *880 operate such a repair program. The Taxpayers counter that media scrutiny in Vancouver was intense, the state auditor sought an AG opinion on the issue, and the issue made it to the state legislature in 2001. We conclude that the issue is of widespread public interest because of the media coverage in Clark County and because of the possibility that other PUD's statewide may be interested in repairing appliances.

II. Standing
Under the Uniform Declaratory Judgment Act, standing and justiciability requirements tend to overlap. Amalgamated Transit Union Local 587 v. State, 142 Wash.2d 183, 203, 11 P.3d 762 (2000), 27 P.3d 608 (2001). Inherent in justiciability requirements are the traditional limiting doctrines of standing, mootness, and ripeness. To-Ro Trade Shows v. Collins, 144 Wash.2d 403, 411, 27 P.3d 1149 (2001), cert. denied, 535 U.S. 931, 122 S.Ct. 1304, 152 L.Ed.2d 215 (2002). The PUD contends that the Taxpayers lack standing because they have not demonstrated that they are "within the zone of interests to be protected or regulated" and because they have suffered no harm, citing Save A Valuable Environment (SAVE) v. City of Bothell, 89 Wash.2d 862, 576 P.2d 401 (1978). App. br. at 14. The Taxpayers assert that, as taxpayers, they need show no specific injury to have standing.
The PUD, citing American Legion Post No. 32 v. City of Walla Walla, 116 Wash.2d 1, 802 P.2d 784 (1991), and Greater Harbor 2000 v. City of Seattle, 132 Wash.2d 267, 937 P.2d 1082 (1997), also argues that taxpayer status is insufficient to confer standing without showing the violation of a unique right or interest. We disagree.
A taxpayer must show special injury where he or she challenges an agency's lawful, discretionary act. American Legion, 116 Wash.2d at 7-8, 802 P.2d 784. Where a municipal corporation acts illegally, "it is a fair presumption that every taxpayer will be injured in some degree by such illegal act." Barnett v. Lincoln, 162 Wash. 613, 623, 299 P. 392 (1931). Here, the Taxpayers do not challenge a lawful discretionary act. Rather, they argue that the PUD lacks lawful authority to operate an appliance repair business. Thus, the Taxpayers are not required to demonstrate a unique injury. State ex rel. Boyles v. Whatcom County Superior Court, 103 Wash.2d 610, 694 P.2d 27 (1985).
But the PUD cites Greater Harbor 2000 v. City of Seattle, for setting the "unifying theme on standing ... that, for taxpayer status alone to be sufficient, there must be either some particularized injury to the taxpayer, or actual financial harm to the taxpaying public of which the plaintiff is a member." App. br. at 18. We are unable to read this theme into Greater Harbor.
In Greater Harbor, the lead opinion, with one concurring justice, reasoned that the taxpayers lacked standing to challenge a property exchange between the port authority and the city because taxpayers were not owners of land abutting the disputed exchange property, had suffered no unique injury, and were simply disagreeing with a discretionary act by the city. Greater Harbor 2000, 132 Wash.2d at 281-84, 937 P.2d 1082. Three justices concurred in the result on the basis that the issue was not ripe. Two justices agreed with the conclusion on the merits but disagreed with the lead opinion that the taxpayers had to show a personal stake in the outcome to have standing. Greater Harbor 2000, 132 Wash.2d at 286-87, 937 P.2d 1082. And two justices dissented, reasoning in part that the taxpayers did not have to show particular injury because they were challenging an unlawful act, not a discretionary act. Greater Harbor 2000, 132 Wash.2d at 300-01, 937 P.2d 1082.
We agree with Division One that Greater Harbor provides no help on taxpayer standing. Robinson v. City of Seattle, 102 Wash. App. 795, 10 P.3d 452 (2000). In Robinson, Division One held that Greater Harbor was not binding because it was a plurality opinion and represented a departure from previous Supreme Court precedent. Robinson, 102 Wash.App. at 805 n. 12, 10 P.3d 452. Robinson concluded that the rule still was that "[t]axpayers need not allege a direct, special, or pecuniary interest in the outcome of the suit, but must demonstrate that their demand to the Attorney General to institute the *881 action was refused." Robinson, 102 Wash. App. at 805, 10 P.3d 452.
The PUD, however, argues that the lead opinion's standing analysis in Greater Harbor has been followed in Dean v. Lehman, 143 Wash.2d 12, 18 P.3d 523 (2001). In Dean, the spouses of prison inmates challenged a statute that allowed the Department of Corrections to deduct certain amounts from funds inmates received. The court stated the general standing rule: "`One who is not adversely affected by a statute may not question its validity.'... This basic rule of standing `prohibits a litigant ... from asserting the legal rights of another.' ... It also mandates that a party have a `real interest therein,' ... prior to bringing a cause of action." Dean, 143 Wash.2d at 18-19, 18 P.3d 523 (citations omitted). The court concluded that the spouses had standing because of their community property interest in the funds. Dean, 143 Wash.2d at 36, 18 P.3d 523.
Apparently the spouses in Dean did not argue they also had standing as taxpayers. In any event, Dean is distinguishable. Dean was more of a private dispute between inmate spouses and the Department of Corrections. The spouses alleged that the State, through the DOC, directly took their funds, not simply funds in which they had a taxpayer's interest. Moreover, the issue did not generate any substantial public interest and the taxpaying public faced little if any risk in the outcome.[2]
We conclude that the Taxpayers need not allege any direct, special, or pecuniary interest to have standing to challenge the PUD's appliance repair business. City of Tacoma v. O'Brien, 85 Wash.2d 266, 269, 534 P.2d 114 (1975). The Taxpayers are challenging the legality of PUD's appliance repair business. Thus, they have standing as taxpayers involved in a dispute of substantial public importance.[3] They need only establish that they asked the Attorney General to sue and the Attorney General declined to do so. O'Brien, 85 Wash.2d at 269, 534 P.2d 114. That condition has been met.

III. Authority to Repair Appliances
Public utility districts are municipal corporations. Washington Natural Gas Co. v. Pub. Util. Dist. No. 1 of Snohomish County, 77 Wash.2d 94, 97, 459 P.2d 633 (1969). A municipal corporation has only those powers expressly granted, necessarily or fairly implied, or those incident to the powers expressly granted, or essential to the declared objects and purposes of the corporation. Port of Seattle v. Washington Util. and Transp. Comm'n, 92 Wash.2d 789, 794-95, 597 P.2d 383 (1979). "And, if there is a doubt as to whether the power is granted, it must be denied." Pac. First Fed. Savings & Loan Ass'n v. Pierce County, 27 Wash.2d 347, 353, 178 P.2d 351 (1947).
A PUD's primary purpose is to furnish its customers with electricity. State ex rel. Pub. Util. Dist. No. 1 of Skagit County v. Wylie, 28 Wash.2d 113, 182 P.2d 706 (1947). We liberally construe the implied authority of a PUD acting in its proprietary capacity to produce, sell, and distribute electricity. Hite v. Pub. Util. Dist. No. 2, 112 Wash.2d 456, 459, 772 P.2d 481 (1989). To be implied within a PUD's express authority, a challenged program must bear "a sufficiently close nexus to the purpose and object the Legislature intended to serve in granting the power to operate an electric utility." City of Tacoma v. Taxpayers of City of Tacoma, 108 Wash.2d 679, 695-96, 743 P.2d 793 (1987). But the authority to operate one business does not imply the authority to operate a separate, but necessarily incident, business. Port of Seattle, 92 Wash.2d 789, 597 P.2d 383.
In spite of this liberal construction, courts have not allowed PUDs to stray far from their express authority. Thus, a PUD has implied authority to create a lien on real *882 property to secure payment of its customers' utility bills and to sell and deliver electrical energy on short term credit. Hite, 112 Wash.2d 456, 772 P.2d 481; Washington Natural Gas, 77 Wash.2d 94, 459 P.2d 633. But the Port of Seattle lacks implied authority to operate its own airporter service. Port of Seattle, 92 Wash.2d 789, 597 P.2d 383. And an irrigation district lacks implied authority to develop its surplus real estate for residential use in order to raise funds. Cowden v. Kennewick Irrigation Dist., 76 Wash. App. 844, 888 P.2d 1225 (1995).
The PUD concedes that it does not have the express authority to repair appliances. But the PUD reasons, we can imply its authority to do so from its charge to "operate, conduct, and maintain its electric utility," its "authority to make contracts, advertise or promote the sale of electricity, and do all other things necessary to carry out its purposes," or its "authority to handle and sell equipment and accessories." App. br. at 32, 34, 36.
The PUD maintains that the "appliance repair service is an integral part of its electric utility operation." App. br. at 28. The dictionary defines "integral" as "of, relating to, or serving to form a whole" or "essential to completeness." WEBSTER'S THIRD NEW WORLD DICTIONARY 1173 (1969). Repairing appliances does not directly relate to furnishing electricity. Nor is it necessary to form a whole of the PUD's electrical supply and distribution business or to make the business complete. Moreover, if general appliance repair was "essential" to running a complete utility district, all districts would offer the services. As the Taxpayers point out, no other district offers repair services.
The PUD also contends that its authority to repair appliances can be inferred from its "authority to make contracts, advertise or promote the sale of electricity, and do all other things necessary to carry out its purposes." App. br. at 34. The PUD maintains that appliance repair services foster its "extensive conservation and energy efficiency efforts." App. br. at 32-33. The Taxpayers question whether conservation is truly a goal of the program, pointing out that the PUD has offered no data to support the contention.
In City of Tacoma v. Taxpayers of City of Tacoma, the Supreme Court considered whether Tacoma City Light had implied authority to issue bonds and use the funds to invest in conservation measures in private residences and businesses. The court held that it did. Taxpayers of City of Tacoma, 108 Wash.2d 679, 743 P.2d 793. Key to the decision was the unchallenged factual finding that conserving electricity was essentially the same as producing new electricity. Taxpayers of City of Tacoma, 108 Wash.2d at 693, 743 P.2d 793. Thus, the court found a sufficiently close nexus between Tacoma City Light's express authority and its conservation program. Taxpayers of City of Tacoma, 108 Wash.2d at 695-96, 743 P.2d 793.
The PUD has not shown the same close nexus. It offered no evidence that repairing appliances is the same as producing new electricity. Nor did it argue or offer evidence that repairing appliances is the same as selling or distributing electricity.
Finally, the PUD points to RCW 54.16.040, which gives public utilities the "right to purchase, handle, sell, or lease ... equipment and accessories necessary and convenient for the use, distribution, and sale" of electricity. The PUD argues that the term "handle" means more than "merely touching, feeling with the hand, holding, or moving with the hand." App. br. at 37.
But the statute refers to equipment and accessories, not appliances. Nor does the statute mention the repair of either equipment, accessories, or appliances. Moreover, the statute limits the equipment a PUD can "handle" to those "necessary and convenient for the use, distribution and sale" of electricity. RCW 54.16.040. Assuming that appliances fit within the statute, we would have to read "use" as meaning the customer's use, not PUD's use, to accept the argument. But this is inconsistent with "distribution" and "sale," which clearly refer to the PUD's distribution and sale. The most reasonable reading of the statute then is that "use" means the PUD's use, not the customer's use. If so, the PUD's argument fails. The PUD does not handle customers' appliances *883 for its own use, distribution, or sale of electricity.
We conclude the PUD has not shown that its appliance repair business bears such a close nexus to furnishing electricity to its customers to fit within its implied authority.

IV. Doctrine of Laches
The PUD next argues that because the Taxpayers delayed suing until well after the AG opinion, the doctrine of laches bars the action. Laches may be established where the plaintiff (1) knows or reasonably should know of the cause of action, (2) unreasonably delays in commencing the action, and (3) causes damage to the defendant as a result. Buell v. City of Bremerton, 80 Wash.2d 518, 522, 495 P.2d 1358 (1972). But "[n]one of these elements alone raises the defense of laches." Buell, 80 Wash.2d at 522, 495 P.2d 1358. The PUD contends that "there was knowledge of the basis for their suit, discussion about suing for years, and no good reason for waiting so long to file." App. br. at 44. The PUD also asserts that the delay has "prejudiced and damaged" them. App. br. at 44. The Taxpayers counter that their delay was reasonable and did not prejudice the PUD.
A declaratory judgment action must be brought within a "`reasonable time.'" App. br. at 42; Brutsche v. City of Kent, 78 Wash.App. 370, 376, 898 P.2d 319 (1995) (quoting Federal Way v. King County, 62 Wash.App. 530, 536, 815 P.2d 790 (1991)). The PUD argues that if Taxpayers had sued earlier, it could have redirected the repair program's time and resources elsewhere, and it could have attempted to get legislation enacted to authorize appliance repair.
We find neither unreasonable delay nor harm to the PUD from any delay. The PUD knew that the attorney general had opined that they lacked legal authority for the repair program. The PUD was also aware of the ongoing public interest in and media attention to the issue. And the PUD knew of the 2001 proposed legislation to prohibit them from continuing appliance repair. The PUD chose to continue its repair program despite the concerns evident from the public, the media, the AG, and the legislature. We agree with the Taxpayers that nothing they did caused the PUD to continue the program.

V. Summary Judgment and AG Opinion
The PUD raises two procedural issues. It argues that the trial judge applied a restrictive rather than liberal test of implied authority. And it maintains that the trial court gave undue weight to the AG opinion. Neither issue is important on appeal because we review summary judgments de novo, engaging in the same inquiry as the trial court. Wilson v. Steinbach, 98 Wash.2d 434, 437, 656 P.2d 1030 (1982). Here, the parties do not dispute the material facts and we have addressed the legal issues the PUD raises.
Affirmed.
We concur: BRIDGEWATER, J., and QUINN-BRINTNALL, A.C.J.
NOTES
[1] Kightlinger, for reasons not important here, has been dismissed. The other taxpayers carry on.
[2] Nat'l Elec. Contractors Ass'n, Cascade Chapter v. Riveland, 138 Wash.2d 9, 978 P.2d 481 (1999), engaged in a similar analysis where electrical contractors and electricians' unions sued to enjoin DOC from using inmates to perform electrical work.
[3] The issue reaches beyond Clark County. Other PUDs, statewide, could engage in the same or similar businesses.