IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| 350 Seattle, 350 Wenatchee, 350 Everett, 350 Bellingham, Olympic Climate Action, 350 Tacoma, Kitsap Environmental Coalition, 350 Yakima, 350 Eastside, and 350 West Sound Climate Action, <br><br> Appellants, <br><br> v. <br><br> Puget Sound Clean Air Agency, Northwest Clean Air Agency, Olympic Region Clean Air Agency, Southwest Clean Air Agency, Benton Clean Air Agency, Spokane Regional Clean Air Agency, and Yakima Regional Clean Air Agency, <br><br> Respondents. | No. 84139-4-I <br><br> DIVISION ONE <br><br> UNPUBLISHED OPINION |

CHUNG, J. — A coalition of environmental groups sued Washington State's seven Clean Air Act agencies seeking declaratory and injunctive relief preventing the agencies' boards of directors from delegating the authority to approve new sources of air pollution. The coalition claims delegation is impermissible because it shifts responsibility from the boards to professional staff in violation of the Clean Air Act, ch. 70A.15 RCW. The trial court found the lawsuit was not justiciable under the Uniform Declaratory Judgments Act (UDJA), ch. 7.24 RCW, and dismissed it on summary judgment without reaching the merits. We hold that Appellants cannot satisfy the relaxed standing requirements for a procedural

injury, nor have they established taxpayer standing. Further, while the issue of climate change is unquestionably of serious public importance, the exception to the standing requirement for matters of public importance does not apply here, when judicial review is available for the challenged type of agency decisions. We affirm.

FACTS

Washington's seven Clean Air Act agencies (Agencies)[1] work with the Department of Ecology to implement both state and federal law. RCW 70A.15.1500. As one method of regulating air pollution, the Agencies require a permit for new sources of pollution. Each step in the process of seeking approval of a Notice of Construction (NOC) is highly technical. See RCW 70A.15.2210. An Agency "shall" approve NOC applications that meet all requirements and "shall . . . deny[]" those that do not. RCW 70A.15.2210(3). It has long been the practice at all seven Agencies for directors to delegate to their professional staff the authority to issue NOC approvals.

Appellants are environmental groups (the 350 Groups)[2] from across Washington State whose missions include fighting climate change and reducing greenhouse gas emissions. Without contesting any specific NOC order, the 350 Groups filed suit against all the Agencies seeking a declaratory judgment that the

---

[1] The seven agencies are Puget Sound Clean Air Agency (PSCAA), Northwest Clean Air Agency (NWCAA), Olympic Region Clean Air Agency (ORCAA), Southwest Clean Air Agency (SWCAA), Benton Clean Air Agency (BCAA), Spokane Regional Clean Air Agency (SRCAA), and Yakima Regional Clean Air Agency (YRCAA).

[2] The Appellant environmental groups are 350 Seattle, 350 Wenatchee, 350 Everett, 350 Bellingham, Olympic Climate Action, 350 Tacoma, Kitsap Environmental Coalition, 350 Yakima, 350 Eastside, and 350 West Sound Climate Action.

Agencies are violating RCW 70A.15.2210 by delegating authority to decide NOCs to professional staff. They also seek a permanent injunction prohibiting the Agencies from such delegations because "all of the local clean air agencies in the State are violating the Act," and "permitting agencies throughout the state have collectively decided to ignore the Act." The 350 Groups claim that this delegation to professional staff harms their members' "aesthetic, economic, health, and recreational interests." They assert that greenhouse gas emissions and other pollutants would decrease if directors, rather than professional staff, reviewed NOC applications because they would be more responsive to constituents' concerns.

The trial court denied the 350 Groups' motion for summary judgment, granted ORCAA and SWCAA's cross-motion for summary judgment, and dismissed the case with prejudice. The court determined the suit was not justiciable under the UDJA because the 350 Groups "offer no evidence to show how their statutory construction would affect a final agency decision or the injury they seek to redress."

The court separately found none of the 350 Group organizations or members submitted admissible evidence of their taxpayer status. Having presumed the organizations and members were taxpayers, the court denied the 350 Groups' motion to supplement the record with evidence of taxpayer status. The court denied the 350 Groups' motion for reconsideration, and it again denied as futile their request to supplement the record to include evidence of taxpayer status.

The 350 Groups sought direct review by the Supreme Court. The Supreme Court denied review and transferred the case to this court.

## ANALYSIS

The 350 Groups appeal the superior court's dismissal of their claims on justiciability grounds and its failure to grant declaratory and injunctive relief. We review orders on summary judgment de novo. Kim v. Lakeside Adult Family Home, 185 Wn.2d 532, 547, 374 P.3d 121 (2016). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Folsom v. Burger King, 135 Wn.2d 658, 663, 958 P.2d 301 (1998) (citing CR 56(c)). We consider the evidence and reasonable inferences in the light most favorable to the nonmoving party. Kim, 185 Wn.2d at 547. To defeat summary judgment, the opposing party must set forth specific facts showing a genuine issue of material fact and may not rely on allegations or self-serving statements. Newton Ins. Agency & Brokerage, Inc. v. Caledonian Ins. Grp., Inc., 114 Wn. App. 151, 157, 52 P.3d 30 (2002).

The UDJA provides that "[a] person . . . whose rights, status or other legal relations are affected by a statute . . . may have determined any question of construction or validity arising under the . . . statute . . . and obtain a declaration of rights, status or other legal relations thereunder." RCW 7.24.020. However, a justiciable controversy must exist lest a court step into the prohibited area of advisory opinions. Pasado's Safe Haven v. State, 162 Wn. App. 746, 760, 259 P.3d 280 (2011). "Justiciability is a threshold inquiry and must be answered in the affirmative before a court may address the merits of a litigant's claim." Coppernoll

v. Reed, 155 Wn.2d 290, 300, 119 P.3d 318 (2005) (citing To-Ro Trade Shows v. Collins, 144 Wn.2d 403, 411, 27 P.3d 1149 (2001)). Justiciability is a question of law that we review de novo. Am. Traffic Solutions, Inc. v. City of Bellingham, 163 Wn. App. 427, 432, 260 P.3d 245 (2011).

To establish a justiciable controversy, a plaintiff must show four elements:

(1) . . . an actual, present and existing dispute, or the mature seeds of one, as distinguished from a possible, dormant, hypothetical, speculative, or moot disagreement, (2) between parties having genuine and opposing interests, (3) which involves interests that must be direct and substantial, rather than potential, theoretical, abstract or academic, and (4) a judicial determination of which will be final and conclusive.

Diversified Indus. Dev. Corp. v. Ripley, 82 Wn.2d 811, 815, 514 P.2d 137 (1973). The first prong concerns ripeness and mootness. Lee v. State, 185 Wn.2d 608, 617, 374 P.3d 157 (2016). On appeal, the parties focus their dispute on the third and fourth requirements for justiciability, without addressing the other requirements.

The third UDJA justiciability requirement encompasses standing. Lee, 185 Wn.2d at 618 (citing To-Ro Trade Shows, 144 Wn.2d at 414); see also Am. Legion Post #149 v. Wash. State Dep't of Health, 164 Wn.2d 570, 593, 192 P.3d 306 (2008) ("Standing requirements tend to overlap the requirements for justiciability under the UDJA."). Generally, under the UDJA, to establish that a party's "rights, status or other legal relations are affected by a statute,"[3] a party must show that (1) the interest asserted is arguably within the zone of interests protected by the statute and (2) the challenged action must have caused injury in

---

[3] RCW 7.24.020

fact. Five Corners Family Farmers v. State, 173 Wn.2d 296, 302-03, 268 P.3d 892 (2011) (internal quotations omitted).

Rather than apply the general UDJA two-part standing test, the 350 Groups argue they either meet the requirements for standing under a "relaxed test" for procedural injuries or they have standing as taxpayers.[4] Alternatively, the 350 Groups argue that an exception to standing applies because their suit involves a matter of public importance, so this court should reach the merits.

A. The relaxed test for standing to challenge a procedural injury

"Where the injury complained of is procedural in nature, standing requirements are relaxed." Five Corners, 173 Wn.2d at 303. To show a procedural injury, a party must (1) identify a constitutional or statutory procedural right that the government has allegedly violated, (2) demonstrate a reasonable probability that the deprivation of the procedural right will threaten a concrete interest of the party, and (3) show that the party's interest is one protected by the statute or constitution. Id. at 303 (citing Summers v. Earth Island Inst., 555 U.S. 488, 129 S. Ct. 1142, 1151, 173 L. Ed. 2d 1 (2009) (other citations omitted)). The third element of this relaxed test is a specific application of the zone of interest component of the general two-part UDJA standing test. Id. at 303.

The zone of interest element "is easily met in environmental suits because of the abundance of laws affecting use of our natural resources." Save a

---

[4] The 350 Groups referenced associational standing at oral argument, but otherwise did not argue it on appeal. "[A]n appellate court generally will not consider an issue raised for the first time during oral argument where there is no argument presented on the issue and no citation to authority provided." State v. Olson, 126 Wn.2d 315, 320, 893 P.2d 629 (1995); RAP 12.1 (this court will decide a case "only on the basis of issues set forth by the parties in their briefs"). As Appellants did not address associational standing in their briefing, we do not reach it.

Valuable Environment (SAVE) v. City of Bothell, 89 Wn.2d 862, 866, 576 P.2d 401 (1978), quoted in Magnolia Neighborhood Planning Council v. City of Seattle, 155 Wn. App. 305, 313 n.7, 230 P.3d 190 (2010). Here, the 350 Groups assert outdoor recreational interests that are within the zone of interests protected by the state's Clean Air Act.[5] Thus, the 350 Groups satisfy the third element of the relaxed standing test for challenging a procedural injury.

The first and third elements of the relaxed test correlate to the UDJA's requirement for injury-in-fact. Seattle Bldg. & Constr. Trades Council v. Apprenticeship & Training Council, 129 Wn.2d 787, 794, 920 P.2d 581 (1996) (injury-in-fact is satisfied where an agency refuses to provide a procedure required by statute or the Constitution, in which case the United States Supreme Court "routinely grants standing"). The reason for a relaxed test for claimed procedural injury is that the government's failure to comply with procedural requirements is itself sufficient injury, even if the resulting harm is indirect or speculative. See 13 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure § 3531.4, at 433 (2d ed. 1984) (it is "often enough to show that an executive or administrative agency has failed to comply with procedural requirements that might have affected the ultimate decision, even though the decision might well have remained unchanged"; "[f]ailure to comply with procedural requirements of itself establishes sufficient injury to confer standing"), quoted in Seattle Bldg. & Constr. Trades Council, 129 Wn.2d at 794.

---

[5] For example, a member of 350 Seattle, Emily Johnston, identified her recreational interests to include kayaking on Puget Sound, cross-country skiing in the Methow Valley, and hiking in the Cascades, on the Kitsap Peninsula, and on the Olympic Peninsula.

While the Agencies argue that the 350 Groups fail to demonstrate a concrete interest, in the context of the relaxed test for standing for procedural injuries, the Agencies' argument can be more clearly understood to be that the 350 Groups fail to allege a procedural deprivation. Even if, as here, a party has alleged a concrete interest, a party must first be deprived of a procedural right before the deprivation can threaten that concrete interest.

The 350 Groups identify a statutory procedural right that the government allegedly violates when it delegates NOC decisions, but they do not identify a specific instance of such a delegation, nor do they allege that any specific NOC approval was procedurally defective. Instead, the complaint relies on general allegations such as "[a]ll of the [Agencies] are violating the Act's decision-making process by allowing staff . . . to make final approval and mitigation decisions" and "[a]ll of the [Agencies] are violating the Act by treating new source approvals . . . as a ministerial rather than a discretionary decision."

When no specific order is being challenged, there has been no governmental deprivation of a procedural right. In each of the cases cited by the 350 Groups, plaintiffs challenged specific governmental decisions that deprived them of procedural rights.[6] See Seattle Bldg. & Constr. Trades Council, 129 Wn.2d at 793 (challenge to approval of apprenticeship program without formal adjudicatory proceedings); Lands Council v. Wash. State Parks Recreation

---

[6] None of the cases cited by Appellants either utilized the relaxed standing test articulated in Five Corners or analyzed standing under the UDJA because they were brought under statutes that allowed aggrieved persons to challenge those actions directly. Seattle Bldg. & Constr. Trades Council, 129 Wn.2d at 793 (Administrative Procedure Act); Lands Council, 176 Wn. App. at 799 (SEPA); Magnolia Neighborhood Planning Council, 155 Wn. App. at 312 (SEPA).

Comm'n, 176 Wn. App. 787, 799, 309 P.3d 734 (2013) (challenge under State Environmental Policy Act (SEPA) to parks and recreation commission's classification of property that would allow alpine ski area expansion without first preparing an environmental impact statement); Magnolia Neighborhood Planning Council, 155 Wn. App. at 312-14 (challenge to city's redevelopment plan for specific property that occurred without SEPA review).

Likewise, in the seminal case applying the relaxed standing test, Five Corners, the main issue in the case was whether a statutory exemption from the requirement of a permit for water use applied to a cattle feedlot operator's proposed withdrawal of 450,000 to 600,000 gallons of groundwater per day. 173 Wn.2d at 301-02. Appellants sought a declaration that the exemption for stock-watering was limited to uses of less than 5,000 gallons per day. Id. at 301. Regarding standing, "the procedural right Appellants were allegedly denied was to have the Department [of Ecology] review a permit application." Id. at 303. For determinations of whether to issue a permit for water use, the relevant statute required the Department to consider, among other things, whether the proposed use would " 'impair existing rights or be detrimental to the public welfare.' " Id. at 305 (quoting RCW 90.03.290(3)).

Here, in contrast to the cases they cite, the 350 Groups do not allege a specific instance in which the government, i.e., the Agencies, deprived them of a procedural right. In fact, the 350 Groups acknowledge they are not challenging a

specific NOC application or approval. Nor do they allege they have been deprived of their procedural right to challenge a specific approval.[7]

Instead, the alleged procedural deprivation is that NOC applications are reviewed by technically skilled staff rather than directors who, according to the 350 Groups, are "geographically representative and politically accountable." 350 Seattle's communications director, Emily Johnston, expressed the gravamen of the 350 Groups' complaint this way: "I believe that if [the Agencies'] governing boards were making such authorization decisions, they would be more responsive to the concerns of their constituents. . . . [T]echnical staff do not weigh the public's concerns in the same way elected officials do." But the Clean Air Act requires neither the public election of Agency directors nor that Agency directors be appointed from the ranks of elected officials. See RCW 70A.15.2000. The possibility that absent delegation, the Agencies' directors making the decisions would be more accountable than professional staff to those concerned about climate change is not a deprivation of a procedural right.

The 350 Groups focus instead on the second element of the relaxed standing test, contending that they "need not 'establish with any certainty' that following proper procedure will alter the substantive outcome," citing Seattle Bldg. & Constr. Trades Council, 129 Wn.2d at 795. They are correct in that regard. But to satisfy the relaxed test for standing, there must still be a

_____

[7] RCW 43.21B.230 allows appeals of agency actions to the pollution control hearings board. See also RCW 43.21B.110 (describing pollution control hearings board jurisdiction); RCW 43.21B.310 ("An appealable decision or order shall be identified as such and shall contain a conspicuous notice to the recipient that it may be appealed only by filing an appeal with the hearings board …."). Decisions and orders of the pollution control hearings board then may be subject to judicial review. RCW 43.21B.180.

procedural deprivation, and here, none is alleged. Therefore, the 350 Groups cannot establish standing under the relaxed test for procedural harm.

   B. Taxpayer standing

   As an alternative to satisfying the relaxed test for standing to challenge procedural harm, the 350 Groups argue that either their members or the 350 Seattle organization have taxpayer standing, and that where mootness and ripeness are not at issue, "[t]axpayer standing satisfies the UDJA's justiciability criteria." The Agencies argue taxpayer standing does not independently confer justiciability under the UDJA, and the 350 Groups failed to provide admissible evidence of taxpayer status. We agree with the Agencies.

   As an initial matter, the 350 Groups are incorrect that taxpayer standing independently establishes justiciability under the UDJA. "Rather than creating a separate cause of action [from the UDJA], taxpayer standing principles simply provide a means to establish standing." Kanam v. Kmet, 21 Wn. App. 2d 902, 909, 508 P.3d 1071 (2022) (citing Pasado's Safe Haven, 162 Wn. App. at 752-53).[8]

   Washington courts recognize a taxpayer's standing to challenge governmental action. Lee v. State, 185 Wn.2d 608, 614, 374 P.3d 157 (2016). "The recognition of taxpayer standing has been given freely in the interest of

---

[8] In the case cited by the 350 Groups, Kightlinger v. Public Utility District No. 1 of Clark County, the court held that taxpayer plaintiffs had standing under the UDJA, but it did not rule that taxpayer standing alone obviates the need to establish the other elements of justiciability. 119 Wn. App. 501, 504-05, 81 P.3d 876 (2003), abrogated on other grounds by Okeson v. City of Seattle, 159 Wn.2d 436, 451 n.5, 150 P.3d 556 (2007). Rather, the court confirmed that "[a] court will hear a declaratory judgment action only when a justiciable controversy exists or an issue of major public importance is involved," and also held that the exception for matters of public importance applied. Kightlinger, 119 Wn. App. at 504-05.

providing a judicial forum for citizens to contest the legality of official acts of their government." Id. at 615 (citing Greater Harbor 2000 v. City of Seattle, 132 Wn.2d 267, 281, 937 P.2d 1082 (1997)). To allege taxpayer standing, a challenger must be a taxpayer, request the attorney general to act, and have that request denied before commencing suit. Lee, 185 Wn.2d at 615. In this case, only the organizations 350 Seattle and 350 Wenatchee satisfy the second and third requirements.[9]

"When it comes to taxpayer plaintiffs challenging the legality of a governmental act, . . . Washington courts have repeatedly held that no special injury need be shown." Friends of N. Spokane County Parks v. Spokane County, 184 Wn. App. 105, 120, 336 P.3d 632 (2014) (emphasis added). For example, in Lee, the court determined plaintiff taxpayers had taxpayer standing because they challenged the constitutionality of an initiative, "not its unconstitutionality in application." Lee, 185 Wn.2d at 615.

By contrast, a taxpayer's disagreement with a discretionary act of government "is not enough to convey standing." Lee, 185 Wn.2d at 615 (citing Huff v. Wyman, 184 Wn.2d 643, 649, 361 P.3d 727 (2015)). When a plaintiff challenges a discretionary act of government, the plaintiff must show a special injury: "the plaintiff taxpayer must show that he or she has a unique right or interest that is being violated, in a manner special and different from the rights of

---

[9] In July 2021, the two organizations sent a letter to Attorney General Ferguson requesting his office to take action to stop the Agencies from delegating. The Attorney General did not take action, and the 350 Groups filed suit later that month.

other taxpayers." Friends of N. Spokane County Parks, 184 Wn. App. at 120 (internal quotations omitted).

Here, the 350 Groups claim the Agencies deprived them of a procedural right, but they do not claim that the Clean Air Act itself is unlawful, unlike the plaintiffs in Lee, who claimed an initiative was facially unconstitutional. Likewise, Robinson v. City of Seattle, 102 Wn. App. 795, 10 P.3d 452 (2000), cited by Appellants, is distinguishable because it involved a facial challenge to the City's mandatory, city-wide preemployment drug testing program. Id. at 806.

The 350 Groups' basis for taxpayer standing suffers from the same flaw as their argument for the relaxed standard for procedural harm: they do not identify any specific action by the Agencies as unlawful. Similarly, to the extent the 350 Groups challenge NOC approvals as discretionary acts, the 350 Groups do not challenge any specific NOC approval, so there is no "special injury" from a discretionary act sufficient to establish taxpayer standing to challenge such acts.

Moreover, the 350 Groups cannot meet the requirements for taxpayer standing because they failed to adduce evidence of taxpayer status necessary to defeat summary judgment. Ranger Ins. Co. v. Pierce County, 164 Wn.2d 545, 552, 192 P.3d 886 (2008) (a nonmoving party avoids summary judgment when it sets forth specific facts, not speculation or argumentative assertions); CR 56(e) (affidavits at summary judgment must set forth admissible evidence). To bring a taxpayer suit, the taxpayer must allege facts supporting taxpayer status. Kanam, 21 Wn. App. 2d at 910 (citations omitted). "Where a complainant is not a taxpayer, however, any claims based on taxpayer standing must be dismissed."

13

Id. (citations omitted) (plaintiff did not allege he was Tumwater City taxpayer, only that he was taxpayer of Thurston County, and thus lacked standing to challenge Tumwater City ordinances); see also Calvary Bible Presbyterian Church of Seattle v. Bd. of Regents of Univ. of Wash., 72 Wn.2d 912, 917, 436 P.2d 189 (1967) ("Since the trial court found that appellant churches were not taxpayers, it was not error to dismiss them from this case.").

As noted above, only 350 Seattle and 350 Wenatchee could seek taxpayer standing, as they were the only 350 Group associations to request the Attorney General to act. Neither they, nor any of the other 350 Groups, submitted admissible evidence of their own or their members' taxpayer status to the trial court. In a footnote in their summary judgment briefing, the 350 Groups included an internet link to 350 Seattle's own web server, which hosted their return as a .pdf file. While the trial court "presume[d]" that the organizations and their members pay taxes, it ruled that the reference to a website link was not admissible evidence and denied the 350 Groups' motions to authenticate 350 Seattle's tax return.[10]

CR 56(e) sets out forms of admissible evidence for consideration at summary judgment, including requiring that "[s]worn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith." An internet link alone is insufficient to satisfy CR 56(e); there must be an affidavit with a sworn or certified copy of the information that is

_____

[10] Appellants requested the opportunity to authenticate the tax return and confirm its taxpayer status both at the summary judgment hearing and in a subsequent motion to reconsider.

available at that link for the information itself to be admissible. Because the record lacked evidence of taxpayer status for 350 Wenatchee, 350 Seattle, or any of their members, Appellants did not establish taxpayer standing.

In sum, the 350 Groups cannot claim taxpayer standing when they are not challenging the Clean Air Act's facial validity or any discretionary governmental act. Separately, 350 Seattle did not provide admissible evidence of taxpayer status. The trial court properly ruled that Appellants had not established taxpayer standing.

C. The "liberal approach" to standing for matters of public importance

Even if they cannot establish standing, the 350 Groups argue that a public interest exception to standing applies because the climate crisis is an "existential threat," and the authority to make NOC decisions is a "gravely significant matter[] of great public importance." The Agencies argue that this issue can and has been raised in another case, so this court need not reach the issue in a case that is not justiciable. We agree with the Agencies.

Courts will exercise their discretion "and deliver advisory opinions only on those rare occasions where the interest of the public in the resolution of an issue is overwhelming." To-Ro Trade Shows, 144 Wn.2d at 416 (internal citations omitted) (declining to deliver advisory opinion where justiciability requirements were not met and there were no issues of overwhelming public importance). Whether an issue is one of major public importance depends on the extent to which public interest would be enhanced by reviewing the case. Snohomish

County v. Anderson, 124 Wn.2d 834, 841, 881 P.2d 240 (1994) (emphasis omitted). The Supreme Court explained when this exception should apply:

> Where a controversy is of serious public importance and immediately affects substantial segments of the population and its outcome will have a direct bearing on the commerce, finance, labor, industry or agriculture generally, questions of standing to maintain an action should be given less rigid and more liberal answer.

Wash. Nat. Gas Co. v. Pub. Util. Dist. No. 1 of Snohomish County, 77 Wn.2d 94, 96, 459 P.2d 633 (1969). The public interest exception applies when there are issues of "broad overriding public import." Lee, 186 Wn.2d at 618 (describing such cases as "where it appears that an opinion of the court would be beneficial to the public and to the other branches of the government") (quoting State ex rel. Distilled Spirits Inst., Inc. v. Kinnear, 80 Wn.2d 175, 178, 492 P.2d 1012 (1972)). However, the court applies this "liberal approach to standing only in cases where the plaintiff whose standing was challenged was the only plaintiff in the case and the liberal approach was necessary to ensure that the important public issues raised did not escape judicial review." Grant County Fire Prot. Dist. No. 5 v. City of Moses Lake, 150 Wn.2d 791, 803, 83 P.3d 419 (2004) (emphasis in original) (citing Yakima County Fire Prot. Dist. No. 12 v. City of Yakima, 122 Wn.2d 371, 380, 858 P.2d 245 (1993)).

While the issue of climate change is unquestionably of serious importance and great public interest, the controversy in this case cannot be said to meet the high standard for allowing judicial review absent standing. Here, regardless of who approves a NOC application, the decision may be appealed to the pollution control hearings board and then is subject to judicial review. See RCW

16

43.21B.230 (allowing appeals of agency actions to pollution control hearings board); RCW 43.21B.180 (providing for judicial review of final decisions and orders of pollution control hearings board). Indeed, this precise issue, the allegedly ultra vires delegation of authority to approve NOC orders, is pending before Division II in an appeal from an agency decision.[11] Thus, we need not dispense with the standing requirement to ensure the issue of delegating NOC order authority does not escape judicial review.

Further, the Agencies have been delegating authority to professional staff since the 1970s, so no "immediate" effect supports the public importance exception. Delegation of NOC approvals is routine and there is no particularly immediate effect from this delegation.

The 350 Groups urge that City of Edmonds v. Bass, 16 Wn. App. 2d 488, 481 P.3d 596 (2021), provides authority for the counter-proposition: the issue is of sufficient public interest because the ACT litigation exists. In Bass, this court held that whether a newly codified firearms storage statute preempted a municipal regulation was a matter of public importance because the issue affected "every gun owner and every municipality in the state" and the issue was a question of law. Id. at 496-97. However, this reasoning in Bass is dicta[12] and regardless, does not support the 350 Groups' argument. The Bass court

---

[11] Advocates for a Cleaner Tacoma v. Puget Sound Clean Air Agency, No. 56938-8-II (ACT litigation).

[12] The court in Bass held that the plaintiffs separately satisfied the general UDJA two-part test for standing, so the court's holding on the public importance exception is dicta. 16 Wn. App. 2d at 496 (citing Alim v. City of Seattle, 14 Wn. App. 2d 838, 852, 474 P.3d 589 (2020)). This court need not follow statements in a case unnecessary to decide it. Ass'n of Wash. Bus. v. Dep't of Revenue, 155 Wn.2d 430, 442 n.11, 120 P.3d 46 (2005).

reasoned that municipality-specific ordinances concerning the safe storage of firearms would necessitate challenges to every different ordinance, even though the preemption analysis presented the same question of law for each ordinance. Id. at 497. Here, the opposite is true: one applicable state statute either does or does not permit delegation. Once an appellate court decides that issue, every Clean Air Act agency in the state will be bound by it. Thus, Bass does not support the argument that 350 Groups must sue every Agency to resolve the issue of whether the Clean Air Act permits delegation. For these reasons, the exception to the standing requirement for matters of public importance does not apply here.

## CONCLUSION

The 350 Groups cannot establish standing under the general two-part UDJA test, the relaxed three-part standing test for procedural harm, or as taxpayers. Standing is required to establish justiciability, so the 350 Groups' claim is not justiciable under the UDJA. Further, this case does not raise issues of public importance justifying review absent standing. The trial court properly granted summary judgment in the Agencies' favor without reaching the merits.

We affirm.

_Chung, J._

WE CONCUR:

Birk, J.